Margaret M. SOPHA, Individually and as Special
Administrator of the Estate of Robert W. Sopha,
Plaintiff-Appellant,

v.

OWENS-CORNING FIBERGLAS CORPORATION, Pittsburgh-
Corning Corporation, Rapid American Corporation,
Owens-Illinois, Inc., Building Service Industrial Sales
Co., Inc., Allied Insulation Supply Co., Inc.,
Sprinkmann Sons Corporation, Milwaukee Insulation
Co., Inc., All-Temp Insulation Inc., GAF Corporation,
Armstrong World Industries, Asbestos Claim Manage-
ment Corporation, and Amchem Products, Inc.,
Defendants-Respondents.

Supreme Court

*No. 98–1343. Oral argument September 10, 1999.—Decided
October 27, 1999.*

(Also reported in 601 N.W.2d 627.)

212

213

For the plaintiff-appellant there were briefs by *Bruce A. Ranta* and *Cunningham & Lyons, S.C.,* Milwaukee and oral argument by *Bruce A. Ranta.*

For the defendants-respondents there was a brief by *Trevor J. Will, G. Michael Halfenger, Marti L. Schreier* and *Foley & Lardner,* Milwaukee and oral argument by *Trevor J. Will.*

¶ 1.  SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This case comes before the court on certification of the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1997–98).[1] Margaret Sopha, individually and the Estate of Robert Sopha, acting through the special administrator Margaret Sopha, the plaintiffs, appeal an order of the Circuit Court for Dane County, Gerald C. Nichol, Judge. The order granted the motion of Owens-Corning Fiberglas Corporation et al., the defendants, to dismiss the plaintiffs' action on the ground that it was barred by the statute of limitations. We reverse the order of the circuit court and remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

¶ 2.  In March 1987, Robert Sopha and his wife Margaret filed a complaint in the Circuit Court for Milwaukee County seeking damages for injuries to Robert's lungs allegedly caused by exposure to asbestos. The action was dismissed "on the merits and with prejudice."[2]

¶ 3.  The plaintiffs commenced this action in March 1997, alleging that Robert Sopha had been diag-

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 text unless otherwise noted.

[2] *Sopha v. Carey Canada, Inc.*, No. 87-CV–743–127 (Oct. 23, 1989).

nosed with mesothelioma, a malignant condition allegedly caused by exposure to asbestos. The plaintiffs assert, and the circuit court found, that mesothelioma is distinct from the asbestos-related injuries alleged in the plaintiffs' 1987 complaint.

¶ 4. The first issue presented is whether a diagnosis of a non-malignant asbestos-related condition (here either pleural thickening or asbestosis) triggers the statute of limitations for any and all injuries to the plaintiffs caused by exposure to asbestos, or whether a later diagnosis of a distinct and later manifested malignant asbestos-related condition (here mesothelioma) triggers a new statute of limitations on the distinct and later manifested condition. We conclude that a diagnosis of a non-malignant asbestos-related lung pathology does not trigger the statute of limitations with respect to a claim for a later diagnosed, distinct malignant asbestos-related condition.

¶ 5. The second issue presented is whether the doctrine of claim preclusion bars the plaintiffs, whose first action for a non-malignant asbestos-related condition ended in a judgment of dismissal, from bringing a second action for damages for a malignant asbestos-related condition. We conclude that the doctrine of claim preclusion is not applicable in this case.

¶ 6. Our holding in this case implicates important interests for the plaintiffs, defendants, and the legal system. After weighing carefully the interests underlying the statute of limitations, the single cause of action rule, the discovery rule, rules limiting recovery to damages that are reasonably certain and the doctrine of claim preclusion, the court concludes that the plaintiffs should be allowed to go forward with their suit. We hold that a person who brings an action based on a diagnosis of a non-malignant asbestos-related con-

217

dition may bring a subsequent action upon a later diagnosis of a distinct malignant asbestos-related condition. The diagnosis of a malignant asbestos-related condition creates a new cause of action and the statute of limitations governing the malignant asbestos-related condition begins when the claimant discovers, or with reasonable diligence should discover, the malignant asbestos-related condition.

## I

¶ 7. For purposes of this appeal we set forth the following facts. Robert Sopha worked as an insulator from 1951 until his retirement in 1995. He was regularly exposed to insulation products containing asbestos during his employment. Sometime prior to 1987 Robert Sopha was apparently diagnosed with non-malignant pleural thickening. Pleural thickening is a non-malignant physical condition involving the lining surrounding each lung and the lining inside the chest cavity and is often indicative of exposure to asbestos.

¶ 8. In March 1987, Robert Sopha and his wife filed a complaint in the Circuit Court for Milwaukee County seeking damages for injuries to his lungs, namely, "asbestosis, pulmonary fibrosis and other pathology of the lungs plus the risk of cancer," allegedly caused by exposure to asbestos. After the defendants moved to dismiss the lawsuit on the basis of the three-year statute of limitations, the plaintiffs moved to voluntarily dismiss the action. The action was dismissed "on the merits and with prejudice" by order

dated October 23, 1989.[3] The circuit court made no findings of fact.

¶ 9. In December 1996 Robert Sopha was diagnosed for the first time with mesothelioma, a malignant condition of the pleural lining allegedly caused by exposure to asbestos. The plaintiffs brought an action to recover damages for mesothelioma in March 1997.

¶ 10. Although the defendants, the circuit court and the court of appeals assert that the case is suitable for summary judgment and that no material facts are in dispute, the parties apparently disagree about the nature of Robert Sopha's injuries in 1987.[4]

¶ 11. The plaintiffs assert that Robert Sopha's 1987 complaint contains numerous generic allegations that were not applicable to Robert Sopha's condition at that time. They assert that although the 1987 complaint indicates that Robert Sopha was diagnosed with asbestosis, he was really diagnosed with non-disabling pleural thickening. Brief and Appendix of Plaintiff-Appellant at 6 n. 1.

¶ 12. The defendants disagree with the plaintiffs' characterization of Robert Sopha's asbestos-related physical condition in 1987. The defendants point out that, according to Robert Sopha's 1987 complaint, he had asbestosis and his injuries were serious, permanent and excruciatingly painful.[5] The significance of

---

[3] *Sopha v. Carey Canada, Inc.*, No. 87-CV-743-127 (Oct. 23, 1989).

[4] The defendants' pleadings denied or put at issue allegations in the complaint. They accept allegations in the complaint as true for the limited purpose of deciding their motion to dismiss.

[5] The plaintiffs' 1987 allegations were that Robert Sopha's condition had been "diagnosed as asbestosis, pulmonary fibrosis

219

the disagreement between the parties is not altogether clear. The defendants may be suggesting that if Robert Sopha had asbestosis in 1987, he might have been able to prove that it was reasonably certain he would develop mesothelioma and he therefore could have recovered damages for mesothelioma in the 1987 action.

¶ 13. The defendants assert, however, that whether Robert Sopha had asbestosis in 1987 or whether he had pleural thickening is neither material nor in dispute. It is not material, according to the defendants, because under existing law the result is the same regardless of which condition Robert Sopha had in 1987. According to the defendants, the 1997 action is barred. It is not in dispute, according to the defendants, because the plaintiffs offered no evidence at the circuit court in the present case concerning Robert Sopha's diagnosis as of 1987. Joint Brief and Appendix of Defendants-Respondents at 9.

¶ 14. The circuit court and court of appeals assumed, and this court accepts, the following undisputed facts for purposes of the summary judgment ruling: In December 1996 Robert Sopha was diagnosed for the first time with mesothelioma, a malignant condition distinct from the other asbestos-related conditions from which Robert Sopha suffered in 1987. Furthermore, according to the circuit court and court of appeals, it could not be predicted with reasonable certainty in 1987 that Robert Sopha would develop an asbestos-related malignancy.

and/or other pathology of the lungs, circulatory systems, pulmonary and respiratory systems, [and] that he suffers the possibility of contracting cancer." The complaint thus alleged the possibility of developing cancer and did not allege cancer-related injuries.

¶ 15.   Robert Sopha died in November 1997 of mesothelioma, and the complaint was amended to include a claim for wrongful death. On November 26, 1997, the defendants moved to dismiss the action on the grounds that the action was barred by the statute of limitations and by the doctrine of claim preclusion. Relying on information outside the pleadings, the circuit court treated the motion to dismiss as one for summary judgment. *See* Wis. Stat. § 802.06(3).

¶ 16.   The circuit court concluded that the statute of limitations barred the 1997 action. The circuit court applied the "single cause of action" rule, which dictates that all claims for personal injury caused by a tortfeasor's course of conduct are part of a single cause of action and must be brought in a single lawsuit. According to the circuit court, the plaintiffs' cause of action against the defendants for all personal injuries caused by exposure to asbestos accrued in the 1980s when the plaintiffs first discovered the injuries caused by Robert Sopha's exposure to asbestos. The circuit court ruled that the later appearance of mesothelioma, a new injury not known earlier, did not start a new limitation period or give the plaintiffs a new cause of action.

¶ 17.   Accordingly, the circuit court held that the 1997 cause of action was barred because it accrued more than three years before the 1997 action was commenced. Although the circuit court acknowledged that it was troubled by the result, it concluded it was not at liberty to adopt a new theory of the application of the statute of limitations to asbestos cases.

¶ 18.   The circuit court rejected the defendants' argument that claim preclusion barred the plaintiffs' cause of action. The circuit court held that because the plaintiffs could not have recovered for mesothelioma in

the 1987 action, claim preclusion would not bar them from bringing a subsequent action for that new injury.

¶ 19.   The plaintiffs appealed the order of the circuit court to the court of appeals, and the court of appeals certified the appeal to this court.

## II

¶ 20.   This court reviews an order granting summary judgment using the same methodology as the circuit court. Although we review the motion for summary judgment de novo, we benefit from the analysis of the circuit court. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

## III

¶ 21.   The first issue presented is whether a diagnosis of a non-malignant asbestos-related condition (here either pleural thickening or asbestosis) triggers the statute of limitations for any and all injuries to the plaintiffs caused by exposure to asbestos or whether a later diagnosis of a distinct and later manifested malignant asbestos-related condition (here mesothelioma) triggers a new statute of limitations on the distinct and later manifested condition.

¶ 22.   The statute of limitations applicable to the present case provides that an action to recover damages for injuries to the person shall be commenced within three years from the time the cause of action

accrues. Wis. Stat. §§ 893.04 and 893.54.[6] The question thus becomes: When did the plaintiffs' cause of action to recover damages for mesothelioma accrue? "This court has the power to establish when claims accrue." *Hansen v. A.H. Robbins, Inc.*, 113 Wis. 2d 550, 559, 335 N.W.2d 578 (1983).

¶ 23. This court has stated that "a cause of action accrues when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it."[7]

¶ 24. The defendants argue that the plaintiffs' cause of action accrued when Robert Sopha was diagnosed with pleural thickening or asbestosis in the late 1970s or early 1980s. The plaintiffs had a claim capable of enforcement; the plaintiffs had suitable parties against whom the claim may be enforced; and the plaintiffs had a present right to enforce the claim. Accordingly the defendants conclude that the plaintiffs' cause of action for all asbestos-related injuries accrued in the 1980s; that the 1997 action was not filed

---

[6] Wis. Stat. § 893.04 provides:

... a period of limitation within which an action may be commenced is computed from the time the cause of action accrues until the action is commenced.

Wis. Stat. § 893.54 provides:

The following actions shall be commenced within 3 years or be barred:

(1) An action to recover damages for injuries to the person.

(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another.

[7] *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995). *See also Meracle v. Children's Serv. Socy*, 149 Wis. 2d 19, 26, 437 N.W.2d 532 (1989).

within three years after the cause of action accrued; and that the 1997 action is barred by the statute of limitations.

¶ 25. The answer to the question of when the plaintiffs' cause of action accrued for the recovery of damages for mesothelioma is not as simple as the defendants contend. Three judicially created rules come into play in resolving what constitutes a cause of action and when a cause of action accrues for purposes of applying the statute of limitations. These rules are (1) the single cause of action rule; (2) the discovery rule; and (3) the rule limiting recovery of damages for reasonably certain consequences.

¶ 26. The defendants contend that the determinative rule in the present case is the "single cause of action" rule, sometimes referred to as the "single injury rule"[8] or the "rule against claim splitting."[9] The single cause of action rule determines what constitutes a cause of action. According to the single cause of action rule, all injuries caused by a single transaction or series of transactions by a tortfeasor are part of a single cause of action so that "a later injury from the same tortious act does not restart the running of the statute [of limitations]."[10]

¶ 27. The rule is designed to protect an alleged tortfeasor from multiple actions by limiting a claimant to one action for injuries arising from the tortfeasor's one course of conduct. The defendants urge that a later

[8] *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990).

[9] Restatement (Second) of Judgments § 24 cmt. h. (1982) (relating to claim preclusion).

[10] *Segall v. Hurwitz*, 114 Wis. 2d 471, 482, 338 N.W.2d 333 (Ct. App. 1983).

appearance of a new injury (in this case mesothelioma) does not create a new cause of action or start the running of a new statute of limitations.

¶ 28. The plaintiffs rely on the discovery rule announced by this court in the *Hansen*[11] and *Borello*[12] cases. The discovery rule established that a tort claim accrues for the purposes of the statute of limitations "on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen*, 113 Wis. 2d at 560. The *Hansen* court declared that "[i]t is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury." *Hansen*, 113 Wis. 2d at 559.

¶ 29. The plaintiffs argue that they had no way of discovering Robert Sopha's mesothelioma until he was diagnosed with the condition in 1996 and that pursuant to the discovery rule their cause of action for mesothelioma accrued at that time.

¶ 30. The defendants contend that the discovery rule does not apply in the present case because in the 1980s the plaintiffs knew that they had an injury allegedly attributable to the defendants' conduct, even though they did not know the full extent of the injury. Therefore, according to the defendants, even if we were to apply the discovery rule, all the elements of the plaintiffs' cause of action based on exposure to asbestos were present in the 1980s and the statute of limitations began to run. They conclude that the 1997 action is therefore barred by the statute of limitations.

[11] *Hansen v. A.H. Robbins Co., Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983).

[12] *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986).

¶ 31. The defendants make a valid point. Several Wisconsin cases support the proposition that the appearance of the first compensable injury starts the statute of limitations running for all claims based on the tortfeasor's single course of conduct, even for future injuries that may be difficult to predict.[13]

¶ 32. The defendants' argument leads to discussion of the third rule that demarcates the damages recoverable in an action and therefore affects what constitutes a cause of action and the date of accrual. The third rule declares that recovery for damages may be had for "reasonably certain injurious consequences of the tortfeasor's negligent conduct, not for merely possi-

---

[13] *See, e.g., Nierengarten v. Lutheran Soc. Servs. of Wis.*, 219 Wis. 2d 686, 702, 580 N.W.2d 320 (1998) (parents' cause of action against adoption agency accrued in 1990 with diagnosis of child's attention deficit hyperactivity disorder; statute of limitations barred 1995 lawsuit alleging a more severe injury); *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 317, 533 N.W.2d 780 (1995)(claimant's cause of action for non-consensual sex accrued at time of sexual contact, not later when claimant learned of emotional distress); *Olson v. St. Croix Valley Mem'l Hosp.*, 55 Wis. 2d 628, 633, 201 N.W.2d 63 (1972) (statute of limitations commenced when blood transfusion impaired claimant's capacity for childbearing, even though her injury did not manifest until four years later); *Elfers v. St. Paul Fire and Marine Ins. Co.*, 214 Wis. 2d 499, 506, 571 N.W.2d 469 (Ct. App. 1997)(claimant may not wait and see full extent of injuries but must file a lawsuit upon learning of disabling injury); *Banc One Bldg. Management Corp. v. W.R. Grace Co.*, 210 Wis. 2d 62, 78, 565 N.W.2d 154 (Ct. App. 1997)(cause of action for asbestos-related damage to building accrued when owner first learned that asbestos was present and would increase costs of renovation project).

ble injurious consequences."[14] In Wisconsin a claimant cannot recover for speculative or conjectural damages.

¶ 33. As explained earlier, for purposes of this appeal we assume that the plaintiffs could not have recovered damages for mesothelioma before 1996, because it was not reasonably certain before that year that Robert Sopha would develop mesothelioma. According to the defendants' reasoning, the plaintiffs' claim for mesothelioma was therefore, on the one hand, barred by the statute of limitations if brought in 1997 because the cause of action accrued in the 1980s under the single cause of action and discovery rules. On the other hand, according to the defendants' reasoning, the plaintiffs' claim for mesothelioma would have been premature if brought in the 1980s because recovery of damages was limited to reasonably certain injuries. If the court adopts the defendants' position, the plaintiffs will have no opportunity, at any time, to recover for the most severe injuries allegedly caused by defendants' conduct. The defendants' argument imparts, as one court wrote, "ultimate meaning to the phrase 'catch 22'."[15]

¶ 34. These three rules, delineating for purposes of the statute of limitations what constitutes a cause of action, when a cause of action accrues and what damages are recoverable in an action, are not ironclad. "The question of what constitutes a cause of action and the concept of a statute of limitation is basically a question of public policy." *Olson v. St. Croix Valley Mem'l Hosp.,*

---

[14] *Brantner v. Jenson*, 121 Wis. 2d 658, 663–64, 360 N.W.2d 529 (1985)(quoted with approval in *Meracle v. Children's Serv. Socy of Wis.*, 149 Wis. 2d at 27).

[15] *Devlin v. Johns-Manville Corp.*, 495 A.2d 495, 502 (N.J. Super. Ct. Law Div. 1985).

55 Wis. 2d 628, 636, 201 N.W.2d 63 (1972)(Hallows, C.J., concurring).

¶ 35.    In this case the rules must be considered in the context of asbestos injuries and this action brought to recover damages for mesothelioma. The rules must be balanced and weighed as we attempt to resolve whether the statute of limitations bars the plaintiffs' 1997 action.

¶ 36.    Two conflicting public policies are raised by a statute of limitations: discouraging stale and fraudulent claims and allowing diligent meritorious claimants to seek redress for injuries sustained.[16] The problems caused by the lapse of time must be balanced against the value of allowing meritorious claims. *Hansen*, 113 Wis. 2d at 559.

¶ 37.    The single cause of action rule, like the statute of limitations, seeks to deter stale claims and to allow repose for alleged tortfeasors, thus enabling them to plan for the future with certainty about liability. The single cause of action rule also seeks to deter vexatious and multiple lawsuits arising out of the same tortious incident.[17]

¶ 38.    The discovery rule, by comparison, is grounded in considerations of justice, reasonableness and fundamental fairness. *Hansen*, 113 Wis. 2d at 560. The discovery rule allows a cause of action to go forward when an injured person has had no opportunity to litigate a claim. Allowing such a meritorious claim to proceed "outweighs the threat of stale or fraudulent

---

[16] *Hansen*, 113 Wis. 2d at 558.

[17] *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 520 (Fla. Dist. Ct. App. 1985).

actions."[18] Although the statute of limitations and the single cause of action rule are designed to deny a forum to claimants who do not diligently pursue their claims, the plaintiffs in the present case did not "sleep" on their claim for mesothelioma. They brought the 1997 action promptly after the diagnosis. In this case the discovery rule militates in favor of splitting the actions and starting the statute of limitations anew upon the diagnosis of mesothelioma.

¶ 39.   Furthermore, although stale claims are disfavored because the search for the truth is often hampered by the destruction, loss or fading of evidence and the death or disappearance of witnesses, in this case allowing the plaintiffs to proceed furthers the search for the truth. The evidence relating to the existence of Robert Sopha's mesothelioma, its cause and the resultant damage has developed since 1987. Allowing claims to proceed when claimants file within three years of discovering an asbestos-related malignancy, as opposed to trying damages for the risk or fear of cancer when the first effects of exposure to asbestos appear, promotes the development of more accurate factual records for deciding damages.[19] Moreover, there is almost no chance that the allegation of the existence of mesothelioma or any other malignancy would be fraudulent.

¶ 40.   Although the objectives of the single cause of action rule are finality and judicial economy, allowing a separate cause of action for an asbestos-related malignancy if and when it occurs promotes judicial economy.

---

[18] *Hansen*, 113 Wis. 2d at 559. *See also Spitler v. Dean*, 148 Wis. 2d 630, 633, 436 N.W.2d 308 (1989).

[19] *Wilson v. Johns-Manville Corp.*, 684 F.2d 111, 119 (D.C. Cir. 1982).

¶ 41.  As the plaintiffs argue, and as other juris-
dictions have recognized, a holding that bars the
plaintiffs' cause of action for an asbestos-related malig-
nancy creates incentives for claimants to rush to the
courthouse to initiate anticipatory litigation.[20] Those
who are diagnosed with pleural thickening or other
non-malignant asbestos-related injuries will be
encouraged to file lawsuits immediately upon diagno-
sis, even if they are asymptomatic and would otherwise
be reluctant to sue. To protect themselves they will be
forced to initiate litigation based on the possibility that
they will develop more serious asbestos-related condi-
tions in the future.

¶ 42.  The court must also take into account the
objective of tort law that meritorious claimants recover
adequate compensation from tortfeasors.[21] Unless the
plaintiffs' 1997 action is allowed to proceed the plain-
tiffs may never recover for serious injuries allegedly
caused by the defendants.

¶ 43.  In asbestos cases the crucial interests of
allowing diligent claimants an opportunity to recover
for serious injury or wrongful death and of deterring
anticipatory lawsuits outweigh the threat of stale or
fraudulent actions and a tortfeasor's interest in repose.
As one court stated, "[t]he dimensions of asbestos liti-
gation are so vast, and the potential for inequity so
great, that the need for finality—and the rule against
[claim] splitting—pales in importance."[22]

---

[20] *See, e.g., Wilson v. Johns-Manville*, 684 F.2d at 120;
*Eagle-Picher Indus.*, 481 So. 2d at 522(citing cases).

[21] *See CLL Assoc. v. Arrowhead Pacific Corp.*, 174 Wis. 2d
604, 610, 497 N.W.2d 115 (1993) (articulating the purposes
served by tort law).

[22] *Eagle-Picher Indus.*, 481 So. 2d at 525.

¶ 44. We therefore hold that the statute of limitations does not bar the plaintiffs' 1997 action. The diagnosis of a non-malignant asbestos-related lung pathology does not trigger the statute of limitations with respect to an action for a later diagnosed, distinct malignant asbestos-related condition.

¶ 45. Our decision brings us in conformity with the majority of other jurisdictions that have considered the issue of whether the statute of limitations bars an action for a later diagnosed malignant asbestos-related condition.[23] These jurisdictions conclude that the com-

---

[23] *See, e.g., Wilson v. Johns-Manville*, 684 F.2d at 120–21 (diagnosis of mild asbestosis did not start statute of limitations for mesothelioma caused by same exposure to asbestos); *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991) (diagnosis of pleural thickening did not start statute of limitations for later claim for asbestosis); *Eagle-Picher Indus.*, 481 So. 2d at 520 (claim for increased risk of getting cancer upon diagnosis of asbestosis dismissed; complainant may sue if later diagnosed with cancer); *VaSalle v. Celotex Corp.*, 515 N.E.2d 684 (Ill. App. 1987) (claim for lung cancer not barred by earlier diagnosis of asbestosis); *Wilber v. Owens-Corning Fiberglas Corp.*, 476 N.W.2d 74, 78 (Iowa 1991)(claim for mesothelioma did not accrue when plaintiff was diagnosed with asbestosis); *Pierce v. Johns-Manville Sales Corp.*, 464 A.2d 1020, 1028 (Md. 1983) (claim for lung cancer not barred by earlier diagnosis of asbestosis when no recovery was had for asbestosis); *Larson v. Johns-Manville Sales Corp.*, 399 N.W.2d 1, 9 (Mich. 1986) (claims for asbestos-related cancer not barred by earlier diagnosis of asbestosis when no prior action for asbestosis brought); *Marinari v. Asbestos Corp.*, 612 A.2d 1021, 1028 (Pa. Super. 1992) (diagnosis of pleural thickening did not start statute of limitations for late action based on lung cancer), *modified on other grounds, Simmons v. Pacor, Inc.*, 674 A.2d 232, 237–39 (Pa. 1996) (claim based on diagnosis of asymptomatic pleural

munity's interest in compensating persons for injuries caused by the tortious acts of others "would be significantly undermined by a judge-made rule that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion sometime in the future."[24]

## IV

¶ 46. Even if we were to hold for the plaintiffs on the statute of limitations issue, the defendants argue that the doctrine of claim preclusion requires dismissal of the plaintiffs' action.[25]

---

plaques is sufficient to state a limited claim for medical monitoring damages; discussing with approval that part of *Marinari* that addressed the statute of limitations question); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 685 (Tenn. 1990)(claim for mesothelioma not barred by earlier diagnosis of asbestosis).

A few jurisdictions have held that the statute of limitations begins to run on the manifestation of the first asbestos-related illness. *See, e.g., Joyce v. A.C. & S., Inc.*, 785 F.2d 1200, 1203–05 (4th Cir. 1986)(under Virginia law, diagnosis of pleural thickening triggered statute of limitations for all asbestos-related disease); *Matthews v. Celotex Corp.*, 569 F.Supp 1539, 1542–43 (D.N.D. 1983) (under North Dakota law, claim for lung cancer was dismissed on statute of limitations grounds when plaintiff was diagnosed with asbestos-related pulmonary disease more than six years earlier); *Pustejovsky v. Pittsburgh Corning Corp.*, 980 S.W.2d 828, 831–33 (Tx. Ct. App. 1998)(single action rule prohibits claim splitting in asbestos cases; case dismissed on statute of limitations grounds),*review granted*; *accord Pecorino v. Raymark Indus.*, 763 S.W.2d 561, 569–71 (Tx. Ct. App. 1988).

[24] *Wilson v. Johns-Manville*, 684 F.2d at 119.

[25] The term *claim preclusion* replaces *res judicata*; the term *issue preclusion* replaces *collateral estoppel*. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

¶ 47. The doctrine of claim preclusion provides that a final judgment on the merits bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences.[26] Ordinarily a final judgment is conclusive in all subsequent actions as to all matters "which were litigated or which might have been litigated in the former proceedings."[27] Claim preclusion focuses on judgments and their preclusive effect.

¶ 48. Under the doctrine of claim preclusion, a subsequent action is barred when the following three factors are present: (1) identity between the parties or their privies in the prior and present suits;[28] (2) prior

[26] *Northern States Power*, 189 Wis. 2d at 550. *See also Depratt v. West Bend Mutual Ins. Co.*, 113 Wis. 2d 306, 311–12, 334 N.W.2d 883 (1983)(adopting the transactional approach set forth in the Restatement (Second) of Judgments § 24 (1982) to determine whether two suits involve the same cause of action).

[27] *Depratt*, 113 Wis. 2d at 310. *See also Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994).

[28] The parties to the 1987 and 1997 actions are, for the most part, identical. In the 1987 action both Margaret and Robert Sopha were named plaintiffs. In the 1997 action Margaret Sopha is suing in her own right and on behalf of Robert Sopha's estate.

Ten of the thirteen defendants named in the present action were also named in the 1987 action. One of the new defendants, Rapid American Corp., was sued in part for assuming the asbestos-related liabilities of a defendant in the first action, Celotex. Two defendants (Amchem Products Inc. and All Temp Insulation Inc.) were not parties to the first action. The defendants assert that because the plaintiffs have not disputed claim preclusion as to these new defendants on the grounds that they were not sued in the first action, the plaintiffs have waived such

litigation resulted in a final judgment on the merits by a court with jurisdiction;[29] and (3) identity of the causes of action in the two suits. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995).

¶ 49.    We address the question whether the 1987 and 1997 actions are based on the same cause of action so that claim preclusion applies. Our analysis is similar to our earlier discussion of when a cause of action accrues for the purposes of the statute of limitations. The policies underlying claim preclusion and the single cause of action rule, which we discussed earlier in addressing the statute of limitations, are closely related.[30]

¶ 50.    The plaintiffs argue that claim preclusion does not apply because they could not have recovered for mesothelioma in 1987, when there was no "reasonable certainty" that Robert Sopha would develop this condition. This argument would not generally bar the defense of claim preclusion. Ordinarily, a subsequent injury resulting from a tortfeasor's conduct does not give rise to a new cause of action for the purposes of claim preclusion. The Restatement (Second) of Judgments explains: "It is immaterial that in trying the first action he [the claimant] was not in possession of enough information about the damages, past or pro-

---

an argument. Because we hold that the plaintiffs' action is not barred by claim preclusion, we do not address the merits of this argument relating to these three defendants.

[29] The plaintiffs' 1987 action was dismissed on the merits and with prejudice. We do not address the plaintiffs' contention that when an earlier judgment does not contain any factual findings it does not bind the parties on any issue which might arise in a subsequent case involving a different cause of action.

[30] *Wilson v. Johns-Manville*, 684 F.2d at 118 n. 36.

spective, or that the damages turned out to be unexpectedly large and in excess of the judgment."[31]

¶ 51. Claim preclusion rests on the policy that justice is better served by ensuring finality of judgments and furthering repose, rather than by allowing a claimant the opportunity to obtain improved justice in a second action. This court summarized the purposes of claim preclusion as follows: "the doctrine of claim preclusion provides an effective and useful means to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Northern States Power*, 189 Wis. 2d at 559 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

¶ 52. Although the purposes underlying claim preclusion are important, this court does not blindly apply the doctrine of claim preclusion. The federal seventh circuit court of appeals acknowledged this principle of Wisconsin law as follows:

> Wisconsin law does not treat res judicata as an iron-clad rule which must be implacably applied whenever its literal requirements are met, regardless of any countervailing considerations. (citations omitted) While cases admitting exceptions to the rule are rare, we believe that the Supreme Court of Wisconsin would not turn a deaf ear to argument that in a particular sort of case the policy reasons

---

[31] Restatement (Second) of Judgments § 25, cmt. c (1982).

In contrast to the rule stated in the Restatement, some courts would allow claim splitting when the claimant does not know the full dimensions of the claim at the time of the first action. *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4415 (1981) (citing cases).

for allowing an exception override the policy reasons for applying the general rule.

*Patzer v. Board of Regents,* 763 F.2d 851, 856 (7th Cir. 1985).[32]

██

¶ 53. Exceptions to the doctrine of claim preclusion, confined within proper limits, are "central to the fair administration of the doctrine of res judicata." Restatement (Second) of Judgments § 26, cmt. i (1982). Claim preclusion may be disregarded in appropriate circumstances when the policies favoring preclusion of a second action are trumped by other significant policies. Claim preclusion, like the single cause of action rule and the discovery rule, is a principle of public policy applied to render justice, not to deny it. Any exception to claim preclusion, however, must be limited to special circumstances or the exceptions will weaken the values of repose and reliance.[33]

¶ 54. We conclude that this case presents a special circumstance in which claim preclusion should not apply. A holding that claim preclusion bars a second action would force claimants to choose between seeking recovery for non-malignant asbestos-related injuries, such as pleural thickening, or waiting for the development of more serious malignant injuries. Those claimants who wait and do not develop malignant con-

---

[32] The seventh circuit cited *Wendlend v. Wendlend,* 29 Wis. 2d 145, 157, 138 N.W.2d 185 (1965) (making exception to claim preclusion in child custody cases), and *McCourt v. Algiers,* 4 Wis. 2d 607, 611, 91 N.W.2d 194 (1958)(stating that doctrine of res judicata is based on proposition that repeated litigation of identical issues is undesirable when not necessary to prevent unfairness).

[33] 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4415 (1981).

ditions would likely lose their claim for non-malignant injuries because the statute of limitations will have run. Those claimants, like the plaintiffs, who bring an action immediately for damages for their non-malignant injuries would be forced to seek damages for the fear of developing cancer;[34] they would not be permitted to recover for the malignant condition they might later develop.

¶ 55. Exposure to asbestos can result in several injuries that have long latency periods. A claimant in an asbestos case cannot know all the injuries when the early manifested harms appear and consequently cannot sue for all damages at one time. Although latent conditions may occur as a result of any tortious conduct, we can reasonably expect latent conditions to materialize in asbestos cases. That factor distinguishes asbestos cases from most other tort cases. Under these special circumstances relating to exposure to asbestos, the interest in finality of judgments is outweighed by the needs of claimants who, through no fault of their own, cannot discover all possible injuries when the first injury appears.

¶ 56. This court continues to recognize the important values inherent in the doctrine of claim preclusion. Today's decision carves out what we view as a narrow exception to that doctrine. Allowing the plaintiffs' 1997 action to proceed permits a meritorious claim to be litigated and at the same time does not open the courts to vexatious, repetitious or needless claims.

[34] *Brantner v. Jenson*, 121 Wis. 2d 658, 666, 360 N.W.2d 529 (1985)("A doctor's realistic prediction as to the possibility of future surgery, illness or disability may give rise to reasonable fear and anxiety in the victim concerning his or her future health and well-being.").

¶ 57. In sum, the court concludes that because the development of mesothelioma could not have been reasonably predicted when the 1987 action was brought, an exception to claim preclusion is justified in this case. As the Restatement of Judgments declares, claim preclusion shall not be enforced if it "is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. . . ." Restatement (Second) of Judgments § 26(f) (1982). The overwhelming interest in justice served by allowing the plaintiffs' 1997 cause of action to proceed outweighs the policies favoring claim preclusion. To bar plaintiffs' cause of action in this case would be to deny justice.

¶ 58. Several jurisdictions that have decided the question of claim preclusion in asbestos cases similar to this one have come to the same conclusion that we reach today.[35]

---

[35] *See Marinari v. Asbestos Corp.*, 612 A.2d at 1028–29 ("we today join a majority of jurisdictions which have responded to this difficult issue by holding that an asbestos plaintiff may assert, in a second lawsuit, a claim for a distinct, separate disease if and when it develops at a later time"), *modified on other grounds, Simmons v. Pacor, Inc.*, 674 A.2d at 237–39 (claim based on diagnosis of asymptomatic pleural plaques would be sufficient to state a limited claim for medical monitoring damages only; discussing with approval the part of *Marinari* which allows claim splitting); *Eagle-Picher Indus.*, 481 So. 2d at 520 (claimants may bring second action for asbestos-related cancer diagnosed after first action); *Devlin v. Johns-Manville Corp.*, 495 A.2d 495, 500–502 (N.J. Super. Ct. Law Div. 1985) (claimants may bring a second action for exposure to asbestos if and when asbestos-related cancer diagnosed).

V

¶ 59.   We next consider the defendants' other arguments against today's holding.

A.

¶ 60.   The defendants argue that allowing the plaintiffs' 1997 action to proceed deprives them of their vested property right in the 1987 judgment or of their constitutionally protected right to be free of a claim once the statute of limitations has expired. They assert that extension of the period of limitations after its expiration amounts to a taking of property without due process of law. As we stated in *Borello*, 130 Wis. 2d at 416, "[c]learly, once a statute of limitations has run, the party relying on the statute has a vested property right in the statute-of-limitations defense, and new law which changes the period of limitations cannot be applied retroactively to extinguish the right."

¶ 61.   However, as the defendants recognize, *Borello* held that an interpretation of when a cause of action accrues does not offend vested property rights. *Borello*, 130 Wis. 2d at 417–21. In this case, as in *Borello*, we are interpreting when a cause of action accrues. We hold that until Robert Sopha was diagnosed with mesothelioma in 1996, the plaintiffs had no enforceable claim for mesothelioma. Because the plaintiffs had no claim for damages for mesothelioma until 1996, their 1997 cause of action for mesothelioma was not barred by the statute of limitations, and nothing in this opinion revives a statute of limitations. Furthermore, the 1987 judgment never encompassed the claim for damages for mesothelioma and so the 1997 action does not violate the defendants' property rights in the 1987 judgment. We therefore reject the defendants'

239

argument that our holding violates the defendants' constitutional rights.

## B.

¶ 62. The defendants further argue that any change in the statute of limitations is for the legislature, citing *State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 580 N.W.2d 203 (1998). In *Chrysler Outboard*, the court acknowledged that "Wisconsin courts have traditionally held that statutes of limitations are policy considerations within the province of the legislature."[36] We wholeheartedly agree with this statement.

¶ 63. But the court in *Chrysler Outboard* distinguished that case in which it refused to adopt the discovery rule for violations of state law from tort cases involving concealed, latent injuries in which the discovery rule had already been adopted. 219 Wis. 2d at 156. In *Chrysler Outboard* the court deferred to the legislature. In tort cases involving latent injuries this court has, when the demands of justice so require, interpreted when a cause of action accrues. The seminal decision is, of course, *Hansen v. A.H. Robbins, Inc.*, 113 Wis. 2d 550, 559–60, 335 N.W.2d 578 (1983), in which the court adopted the discovery rule for tort cases, thus exercising its power to determine when claims accrue "in the interest of justice and fairness." *Hansen* is precedent for this case.

## C.

¶ 64. The defendants contend that our holding will encourage all those diagnosed with asymptomatic

---

[36] *State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 156, 580 N.W.2d 203 (1998)(quoting *Miller v. Kretz*, 191 Wis. 2d 573, 580, 531 N.W.2d 93 (Ct. App. 1995)).

pleural thickening or minor asbestos-related injuries to file lawsuits, when they might not otherwise do so. The defendants assert that, while actual damages for such claims would be small, claimants could potentially recover significant damages for fear of future injury and then in subsequent suits recover significant damages if a malignancy develops. The defendants argue that a tortfeasor's payment both for risk of future cancer and for the cancer that later develops is unfair. In this case, however, the plaintiffs did not recover compensation in the 1987 action. The scenario the defendants present is not before us, and we do not address it.

¶ 65.   The defendants point out that our decision raises the possibility that a claimant could seek punitive damages more than once against the same tortfeasor. Although we recognize such an issue as a theoretical possibility, the facts of this case do not present this issue, and we do not address it.

¶ 66.   The defendants further contend that allowing multiple actions for different injuries caused by the same course of tortious conduct creates a slippery slope down which our jurisprudence relating to statute of limitations and claim preclusion would slide. The defendants misconstrue the nature of our holding. We do not overrule any of our prior cases. Decisions such as *Nierengarten v. Lutheran Soc. Servs. of Wis.*, 219 Wis. 2d 686, 580 N.W.2d 320 (1998), and *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995) are still good law. Our decision today carves out a limited exception to the single cause of action rule and the claim preclusion doctrine. Although unforeseen injuries with long latency periods may occur in any tort case, asbestos cases are different. We know that exposure to asbestos can involve both

long latency periods before the appearance of physical changes and the progression of distinct physical diseases. These aspects of exposure to asbestos are what differentiate asbestos cases from the run of the mill personal injury case and are central to our holding. We recognize that claims based on exposure to other toxic substances may have patterns of disease progression similar to claims based on exposure to asbestos. The court will consider those cases when they are presented.

## D.

¶ 67.  The defendants urge that if the court is not willing to dismiss the plaintiffs' 1997 action, then the court should bar a cause of action for asymptomatic pleural thickening, eliminating recovery of damages for medical expenses, fear of future injury and punitive damages. If the court bars the cause of action for pleural thickening, contend the defendants, it could logically establish that the statute of limitations for mesothelioma and other more serious asbestos injuries does not begin to run until the claimant discovers the serious injury. Such a holding, the defendants assert, is consistent with this court's holdings in *Nierengarten*, 219 Wis. 2d at 701–02, and *Meracle v. Children's Serv. Socy of Wis.*, 149 Wis. 2d 19, 26, 437 N.W.2d 532 (1989), that a cause of action arises only upon the expenditure of "extraordinary expenses." Some jurisdictions have adopted this approach.[37]

---

[37] *See In re Hawaii Federal Asbestos Cases*, 734 F.Supp. 1563, 1567 (D. Haw. 1990)("mere presence of. . .pleural plaques in the lung unaccompanied by an objectively verifiable functional impairment is not enough [to recover]"); *Owens-Illinois v. Armstrong*, 591 A.2d 544, 560–61 (Md. App. 1991)(no damages recovered for pleural thickening because no functional impair-

¶ 68. We decline to adopt the blanket ruling the defendants request. A decision whether a claimant can recover for pleural thickening or asbestosis must be made by the circuit court on a case-by-case basis. If the claimant fails to prove damages, the circuit court should dismiss the action.

### E.

¶ 69. The defendants propose alternative options for claimants who are diagnosed with pleural thickening or minor asbestos-related injuries that will allow the claimants to file litigation if serious injuries develop in the future. First, the defendants suggest that a claimant can seek in a lawsuit or in a negotiated settlement the right to file subsequent litigation if and when cancer or other more serious asbestos-related injuries arise.[38] Second, the defendants suggest that a claimant can sign up on the "pleural registry." The registry, as we understand it, was created by members of the plaintiffs' and defendants' bars and allows those exposed to asbestos to "sign up" upon discovering that they have pleural thickening or other non-malignant asbestos-related conditions. Those who sign up may bring future claims if and when they develop more serious asbestos-related injuries, and the signatory entities agree not to assert the defense of the statute of limitations.

---

ment or harm), *rev'd in part on other grounds*, 604 A.2d 47 (Md. 1992); *Simmons v. Pacor, Inc.*, 674 A.2d at 235–238 (asymptomatic pleural thickening gives rise to recovery for medical monitoring only).

[38] Restatement (Second) of Judgments § 26(1)(b) and cmt b. (1982) explain that a court in a first action may expressly reserve a claimant's right to maintain a second action.

¶ 70.   While these may be good solutions to an admittedly difficult situation for both claimants and alleged tortfeasors, this court cannot rely on voluntary private arrangements to dictate our jurisprudence for those who cannot or do not avail themselves of these alternatives.

¶ 71.   Indeed, if we were to hold today that the plaintiffs' 1997 action was barred by the statute of limitations or the doctrine of claim preclusion, alleged tortfeasors may have little reason to enter any such agreements or maintain a registry. In any event, these alternatives do not help the plaintiffs in the present case.

## F.

¶ 72.   The defendants further request that even if this court allows the plaintiffs' 1997 action to proceed, we should apply our holding prospectively. The plaintiffs do not object to applying the holding prospectively as long as they get the benefit of the ruling.

¶ 73.   We should not decide the question of prospective or retroactive application of the holding in this case without briefs on the merits by parties who take adverse positions.

¶ 74.   In sum, for the reasons set forth, we hold that a person who brings an action based on a diagnosis of a non-malignant asbestos-related condition may bring a subsequent action upon a later diagnosis of a distinct malignant asbestos-related condition. The diagnosis of a malignant asbestos-related condition creates a new cause of action and the statute of limitations governing the malignant asbestos-related condition begins when the claimant discovers, or with reasonable diligence should discover, the malignant asbestos-related condition. The order of the circuit

court is reversed and the cause is remanded for further proceedings not inconsistent with this holding.

*By the Court.*—The order of the circuit court is reversed and the cause remanded.