Scott L. HOWARD, Plaintiff–Appellant,

v.

PHILIP MORRIS USA, INC., Defendant–Appellee.

No. 03–3394.

United States Court of Appeals, Seventh Circuit.

Submitted March 24, 2004.[*]

Decided April 29, 2004.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Scott L. Howard, Portage, WI, pro se.

Matthias A. Lydon, Winston & Strawn, Chicago, IL, Defendant–Appellee.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

## ORDER

In the 1980s Scott L. Howard, then a teenager, began smoking Marlboro cigarettes. Two decades later he brought suit against cigarette-manufacturer Philip Morris USA, Inc., seeking damages for cardiovascular and pulmonary ailments he claimed were caused by smoking. The district court granted summary judgment for Philip Morris, determining that Howard's claims were time-barred. Howard appeals.

Because this case comes to us on review of summary judgment in favor of Philip Morris, we view the facts in the light most favorable to Howard. *Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir.2004). Howard began smoking when he was 16 years old and was a heavy smoker for nearly 14 years, at one point smoking as much as four or five packs a day. A few years after he began smoking Howard switched from "Marlboro Reds" to "Marlboro Lights" because he thought they were better for his health.

In 1995 Howard rushed to the hospital believing that he was having a heart attack. He was suffering from rapid heart beat (or tachycardia), irregular heart beat (arrhythmia), and elevated blood pressure. Doctors diagnosed him with mitral valve prolapse and a heart murmur and noted concern for other cardiovascular impairments. They advised him to quit smoking. According to Howard the doctors told him that cigarettes were "the biggest contributing factor" to his heart problems. They advised him, "You are going to have to quit smoking if you want to live." Howard tried but was unable to quit.

Over the next several years Howard continued to receive treatment and medication for cardiovascular problems. In 2000 he was diagnosed with various pulmonary ailments. In 2002 another doctor determined that Howard did not suffer from mitral valve prolapse, and that his cardiac problems were due to smoking. That same year Howard was diagnosed with chronic asthma and early indications of emphysema.

In March 2003 Howard filed suit in Wisconsin state court, alleging that cigarettes manufactured by Philip Morris were responsible for his poor health. Although Howard's pro se complaint is not a model of clarity, he appeared to assert claims sounding in negligence, strict liability, fraudulent concealment, and false advertising. The crux of his complaint was that Philip Morris had designed ads inducing him to smoke while withholding information about the dangers of smoking, particularly that Marlboro Lights were no safer than other cigarettes.

Philip Morris immediately removed the case to federal court on the basis of diversity jurisdiction. On the corporation's mo-

tion the district court dismissed all but Howard's fraud claim, concluding that the rest were essentially failure-to-warn claims preempted by federal law. The district court subsequently granted summary judgment in favor of Philip Morris, finding that Howard's fraud claim was untimely. Specifically the court found that the limitations period began running in 1995 when Howard was advised by his doctors that smoking was injuring his health. Howard's suit brought in 2003 was therefore untimely under Wisconsin's six-year statute of limitations for fraud. The court further concluded that under Wisconsin's "single injury" rule Howard's claim for the later-diagnosed pulmonary ailments was also barred, since the injury stemmed from the same alleged wrongful conduct. The court therefore granted summary judgment in favor of Philip Morris. Howard filed a timely notice of appeal.

■ Before we turn to the merits, we must satisfy ourselves that we have subject matter jurisdiction over this case. Jurisdiction in the district court was premised on diversity of citizenship. *See* 28 U.S.C. § 1332. In the pleadings and the briefs filed with this court, the parties asserted that diversity exists because Philip Morris is a Virginia corporation with its principal place of business in New York and Howard is a "resident" of Wisconsin. But this court has previously admonished that the relevant inquiry for purposes of diversity jurisdiction is not a party's *residency* but his or her citizenship. *See Meyerson v. Harrah's East Chicago Casino,* 299 F.3d 616, 617 (7th Cir.2002). Further, Howard is not necessarily a citizen of Wisconsin simply because he is incarcerated there; rather, a prisoner presumptively retains the state citizenship he had before conviction. *See Bontkowski v. Smith,* 305 F.3d 757, 763 (7th Cir.2002); *Denlinger v. Brennan,* 87 F.3d 214 (7th Cir.1996). We

ordered the parties to file additional jurisdictional memoranda, which revealed that Howard is a citizen of Tennessee, since he lived there prior to his incarceration and intends to return there upon his release. The parties are therefore diverse, giving us jurisdiction over the case.

Howard first challenges an earlier order of the district court denying his request for leave to file an amended complaint. After Philip Morris had filed its motion to dismiss, Howard tendered an amended complaint, which the district court construed as a request for leave to amend his original pleading. The amended complaint was essentially the same as the original complaint except for some additional fact allegations. Philip Morris objected to Howard's submission, and the district court ultimately denied his request as "untimely."

■ Federal Rule of Civil Procedure 15(a) gives a plaintiff the automatic right to amend his complaint once before a responsive pleading is served. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84,* 133 F.3d 1054, 1056–57 (7th Cir.1998); *Camp v. Gregory,* 67 F.3d 1286, 1289 (7th Cir.1995). Howard submitted his amended complaint after Philip Morris had filed its motion to dismiss but before it filed an answer. A motion to dismiss is not a "responsive pleading" for purposes of Rule 15(a), so it did not cut off Howard's right to amend once as a matter of course. *Duda,* 133 F.3d at 1057. The district court was therefore incorrect that Howard's submission was untimely.

■ We have recognized, however, that a district court need not permit the filing of an amended complaint, even before a responsive pleading has been filed, if the amended complaint fails to cure deficiencies in the original complaint. *See id.* at 1057 n. 4; *Perkins v. Silverstein,* 939 F.2d 463, 472 (7th Cir.1991). In his brief How-

ard explains that the amendment was intended "to ensure compliance with the particularity requirements for claims of fraud as prescribed by Fed.R.Civ.P. 9(b)." The district court dismissed the bulk of the claims in Howard's original complaint because the court determined that they were preempted by federal law, not because Howard failed to comply with the pleading requirements of Rule 9(b). Indeed Howard's fraud claim was the only claim that the district court allowed to proceed. Thus Howard was not prejudiced by the district court's rejection of his amended pleading. *See Duda*, 133 F.3d at 1057.

■ We turn then to the district court's summary judgment order. Because the jurisdiction of the district court was based on diversity of citizenship, Wisconsin substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Our task is to "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir.2002). In the absence of authority from the state's highest court, we will give "great weight" to the holdings of the state's intermediate appellate courts. *Id.*

A statute of limitations is part of the forum state's substantive law that will be applied by a federal court sitting in diversity. *See Guar. Trust Co. v. York*, 326 U.S. 99, 109–11, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Allstate*, 285 F.3d at 633. In Wisconsin the statute of limitations for fraud is six years. Wis. Stat. § 893.93(b). Wisconsin has adopted the discovery rule, under which a statute of limitations begins to run when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of the injury but also that the injury was proba-

bly caused by the defendant's conduct or product." *Meracle v. Children's Serv. Soc'y of Wis.*, 149 Wis.2d 19, 437 N.W.2d 532, 534 (1989) (quoting *Borello v. U.S. Oil Co.*, 130 Wis.2d 397, 388 N.W.2d 140, 146 (1986)). Whether the plaintiff exercised reasonable diligence is an objective test; the question is not when the plaintiff actually knew that he had a claim against the defendant but rather when he should have known that he had a claim. *See Estate of Hegarty v. Beauchaine*, 249 Wis.2d 142, 638 N.W.2d 355, 366 (2001).

Howard argues that the 1995 statements of his doctors were insufficient to put him on notice of a smoking-related injury. He asserts that, even though doctors advised him to quit smoking in 1995, none of his physicians attributed his cardiovascular problems to smoking until several years later. He further asserts that while he subjectively believed that cigarettes might be harming his health, his physicians "discounted his cigarette smoking as a factor in his medical complaints." These assertions are not supported by the record.

At his deposition Howard testified that he first began to believe in 1995 that smoking was harming his health, based on the statements of his doctors:

Q: When did you first start to think that cigarette smoking posed a risk to your health?

A: When I started having to take medication to control my heart and blood pressure.

Q: When was that?

A. That was '95, '96.

Q: What was it that led you to believe that cigarette smoking was causing you to have the heart problems.

A: The doctors.

Q: Which doctors?

A: Dr. Kahn, the doctors at the ER. The cardiologists that I saw, whose

name I cannot remember ... they thought that was the biggest contributing factor to it.

Q: What did they tell you?

A: Basically "stop smoking, quit smoking. You are going to have to quit smoking if you want to live, quit smoking." When they found out how much I was smoking, "Are you crazy? You've got to quit smoking."

According to his own testimony Howard was on notice as early as 1995 that he had suffered an injury from cigarettes. *See Meracle,* 437 N.W.2d at 533. The medical records further support that doctors told Howard that smoking was harming his health and that he should quit. Because the statute of limitations began running in 1995, Howard's suit brought eight years later was untimely.

Howard nonetheless argues that his pulmonary impairments diagnosed in 2000 constitute a separate injury that essentially restarted the limitations period. The district court rejected this argument under Wisconsin's single-injury rule, which holds that a later injury from the same tortious act does not restart the limitations period. *See Sopha v. Owens–Corning Fiberglas Corp.,* 230 Wis.2d 212, 601 N.W.2d 627, 633 (1999). Wisconsin courts have held that the appearance of the first compensable injury starts the statute of limitations running for all claims based on the tortfeasor's single course of conduct, even for future injuries that may be difficult to predict. *See Nierengarten v. Lutheran Soc. Servs. of Wis.,* 219 Wis.2d 686, 580 N.W.2d 320 (1998) (parents' negligence claim against adoption agency accrued when adopted child was diagnosed with attention deficit hyperactivity disorder; statute of limitations barred recovery for more severe disorder diagnosed five years later); *Pritzlaff v. Archdiocese of Milwau-*

*kee,* 194 Wis.2d 302, 533 N.W.2d 780 (1995) (plaintiff's cause of action for non-consensual sex accrued at time of sexual contact, not later when she learned full extent of emotional injuries); *see also Elfers v. St. Paul Fire & Marine Ins. Co.,* 214 Wis.2d 499, 571 N.W.2d 469, 506 (1997) ("Our law does not permit a claimant who possesses a cause of action to wait until the full effect of the injury has developed before filing a claim.").

Howard was on notice in 1995 that cigarettes were harming his health. Doctors advised him that if he did not quit smoking his health would continue to deteriorate. They were right. Howard's claim for pulmonary injuries is based on the same course of conduct by Philip Morris that allegedly caused his related cardiovascular problems, and under Wisconsin law he was not entitled to wait to sue until the full extent of his injuries was known. Notably, moreover, if Howard had brought suit in 2000 when his lung problems were first diagnosed his complaint would have been timely. Instead Howard waited three more years to file suit. Under Wisconsin law Howard's claim for pulmonary injuries is also time-barred.

Howard alternatively argues that the statute of limitations did not begin to run until 2001, when the federal government published a report discussing the dangers of Marlboro Lights. But Howard knew long before the release of the government report that cigarettes were harming his health. If he was in fact fraudulently induced to believe that Marlboro Lights were safer, the falsity of that belief would have been apparent as soon as he learned that he had developed an illness caused by smoking. *See Stroh Die Casting Co. v. Monsanto Co.,* 177 Wis.2d 91, 502 N.W.2d 132, 142 (1993) (statute of limitations begins to run when a person is in possession of "such essential facts as will, if diligently

investigated, disclose the fraud"); *see also Winskunas v. Birnbaum*, 23 F.3d 1264, 1266 (7th Cir.1994) (under Wisconsin law "the statute of limitations begins to run in a tort case as soon as the victim of the tort knows he has been injured ... not later when he finds out that he has a legal claim arising out of the injury"). Howard also admitted below that throughout the time he smoked Marlboro Lights he understood that they posed health risks. Accordingly we reject Howard's argument.

Because we affirm on the grounds articulated by the district court, we do not reach Philip Morris's alternative argument that Howard's fraud claim is preempted by federal law.

AFFIRMED.