In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 01-3342

EDWARD BONTKOWSKI,

*Plaintiff-Appellant,*

v.

BRIAN SMITH, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 6353—**Wayne R. Andersen**, *Judge.*

---

SUBMITTED JULY 25, 2002—DECIDED SEPTEMBER 26, 2002

---

Before POSNER, KANNE, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a suit that is going nowhere; but the district court, by granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), buried it prematurely because a few faint signs of life remained. A frequent filer (see *Bontkowski v. United States*, 28 F.3d 36 (7th Cir. 1994); *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459 (7th Cir. 1993); *Bontkowski v. Jenkins*, 661 F. Supp. 576 (N.D. Ill. 1987), aff'd, 860 F.2d 1082 (7th Cir. 1988); *Bontkowski v. United States*, 850 F.2d 306 (7th Cir. 1988)), Edward Bontkowski brought suit against his former wife, Elena Bront, and an FBI agent, Brian Smith, charging that they had conspired to steal valuable prints by Salvador Dali that

he owned and to have him prosecuted on baseless charges of telephone harassment, presumably in order to impede his efforts to recover his property. He sought relief under the *Bivens* doctrine and, regarding the alleged malicious prosecution, under both federal law (a claim blocked by *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001), which holds that malicious prosecution is not a federal constitutional tort as long as the state provides a remedy) and Illinois state law.

The charges border on the fantastic but do not quite cross the line into the territory, illustrated by cases in which plaintiffs complain about electrodes being implanted in their brains by inhabitants of far-off galaxies, in which a district court can, as we noted recently in *Gladney v. Pendleton Correctional Facility*, No. 01-2182, 2002 WL 31040726, at *1 (7th Cir. Sept. 13, 2002), properly dismiss a complaint, even though it makes factual allegations, without bothering to take any evidence. The principal ground on which the district court dismissed Bontkowski's suit was that the only relief he sought—a declaratory judgment that Smith and Bront had violated his constitutional rights, and an injunction to compel Bront to return the prints or the proceeds from their sale, and another injunction to prohibit lawyers employed by the federal government from representing Agent Smith—was relief to which he was not entitled. Regarding the second injunction, the one against Smith's being represented by government lawyers, the judge was of course correct. Smith was in charge of an investigation that resulted in criminal charges of fraud that have led to Bontkowski's being imprisoned; and though those charges are distinct from the charges of telephone harassment of which he complains in this suit, the more than suspicion that this suit is in retaliation for Smith's nailing Bontkowski for fraud brings the charges in it sufficiently within the scope of Smith's employment

as an FBI agent to authorize his representation by the Justice Department. See 28 C.F.R. § 50.15(a); *Nowicki v. Ullsvik*, 69 F.3d 1320, 1326 (7th Cir. 1995). It would be absurd to require law enforcement officers to defend at their own expense against likely groundless spite suits by the people whom they have arrested or investigated. We doubt in any event that the rules regarding representation by the government of its employees are intended for the protection of opposing litigants and thus provide a basis for suit.

The judge also ruled that Bontkowski had failed to serve Bront; this clearly was incorrect. The record in the district court includes a summons addressed to her and a return of service, attested to under penalty of perjury by a process server, stating that a copy of the summons and complaint was left at her home with her daughter and someone named Dave, who was at least 50 years old. Rule 4(e)(2) of the civil rules provides that service may be made by leaving copies of the summons and complaint "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." As Bront has not appeared in the case to object to the service, there is no reason to think that leaving the papers in this manner violated the rule.

Regarding the relief sought, Bontkowski had no standing to obtain an injunction against further violations of his rights by the defendants, as no reason is suggested or appears why the defendants could be expected to make a further attempt on Bontkowski's property. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). There isn't any indication that he has anything left worth stealing, especially as he is at present in prison on the fraud charges that we mentioned. Whether he had standing to obtain a declaratory

judgment, *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001); *Perry v. Sheahan*, 222 F.3d 309, 313-14 (7th Cir. 2000); *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347-48 (11th Cir. 1999), however, will require us to consider briefly the various purposes for which such relief can be sought. One is as a prelude or substitute for injunctive relief, *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir. 1992); the plaintiff wants a change in the defendant's conduct but believes that it will ensue from a declaration of the plaintiff's rights, and by seeking just the declaration the plaintiff avoids the burden of formulating and justifying a precise injunctive remedy. Second, the declaration may serve to quiet title and thus remove an impediment to the plaintiff's use or disposition of his property. *DeWeerth v. Baldinger*, 38 F.3d 1266, 1276 (2d Cir. 1994). And third, it is a method of depriving the defendant of delay as a weapon, 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998); an example of this use of declaratory relief is an insurance company's suit for a declaration that it has no duty to indemnify, motivated by fear that if the company refuses to indemnify its insured and its refusal is later held to have been mistaken, it will have to pay punitive damages. See, e.g., *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 577 (7th Cir. 1991).

None of these grounds is available to Bontkowski; nor can declaratory relief be sought simply as a predicate for a subsequent damages claim. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742-44 (1976); *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994); *California ex rel. California Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 776-77 (9th Cir. 1998). That would circumvent the rule that a judgment in a suit for damages is not final and

appealable until the amount of damages is determined and the defendant ordered to pay it. *Liberty Mutual Ins. Co. v. Wetzel, supra*, 424 U.S. at 742-44; *Abbs v. Sullivan*, 963 F.2d 918, 923 (7th Cir. 1992); *Albright v. UNUM Life Ins. Co. of America*, 59 F.3d 1089, 1092-93 (10th Cir. 1995). But in asking for a declaration of his right to the return of the prints or, if they've been sold, to the proceeds of the sale, Bontkowski may have meant that he wanted an order that would give him either the prints or the proceeds, and so, especially in light of his pro se status, his suit should have been interpreted as an action for replevin or for an affirmative injunction or (so far as the proceeds are concerned), in the alternative, for damages. See *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987). Moreover, if he can prove his case (a tremendous if, obviously) he would be entitled to the imposition of a constructive trust on the prints and the proceeds; his plea for an injunction commanding the return of the prints or the rendering up of the proceeds if the defendants have sold them can be interpreted as a request for the imposition of such a trust, a form of equitable relief and thus a cousin to an injunction. See, e.g., *Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S. Ct. 708, 714 (2002); *Smithberg v. Illinois Municipal Retirement Fund*, 735 N.E.2d 560, 565 (Ill. 2000); *Davis v. Combes*, 294 F.3d 931, 936 (7th Cir. 2002) (Illinois law); *In re Barnes*, 276 F.3d 927, 929 (7th Cir. 2002); *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 380 (N.Y. 1919) (Cardozo, J.).

And even if the district court was right that Bontkowski is seeking relief to which he's not entitled, this would not justify dismissal of the suit. Although Rule 8(a)(3) of the civil rules requires that a complaint contain "a demand for judgment for the relief the pleader seeks," the demand is not itself a part of the plaintiff's claim, *Laird v. Integrated Resources, Inc.*, 897 F.2d 826, 841-42 and n. 69

(5th Cir. 1990); *Schoonover v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (2d ed. 1990), and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6) (dismissal for failure to state a claim). Any doubt on this score is dispelled by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he "has not demanded such relief in [his] pleadings." See *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65-66 (1978); *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998); *Felce v. Fiedler*, 974 F.2d 1484, 1501-02 (7th Cir. 1992); *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 394 (1st Cir. 1999); *Pension Benefit Guaranty Corp. v. East Dayton Tool & Die Co.*, 14 F.3d 1122, 1127 (6th Cir. 1994). It would be appropriate and indeed quite sensible for a judge confronting a complaint that does not demand proper relief to ascertain whether the plaintiff wants the improper relief sought in the complaint or nothing; if so, the complaint must be dismissed. But there is no indication that Bontkowski has his heart set on declaratory and injunctive relief. That would make no sense. Obviously he wants his Dali prints back or, if they've been sold, the proceeds.

Smith defends the dismissal of the suit against him (remember that Bront, the other defendant, has not bothered to appear in the case) on the alternative ground that Bontkowski's federal claim is barred by the applicable statute of limitations, which is two years. See *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). The alleged theft of the Dali prints occurred approximately three years before Bontkowski sued. He reported the theft to the police and was aware that Smith had asked them to halt their investigation of the alleged theft of *another* work

of art (not one of the Dali prints) owned by him. But he argues, and on the present undeveloped state of the record we must accept, that he didn't know that Smith was complicit in Bront's theft of his Dali prints. He may not even have known that they knew each other. If a reasonable person in Bontkowski's position could not have learned that he had a claim against Smith earlier than he learned (which he contends was not until January 1999, *after* he filed this suit!) or if the defendants actively concealed the claim from him until the statute of limitations ran, he would have a defense to the statute of limitations, by virtue of the doctrines of equitable tolling and equitable estoppel respectively. E.g., *Mitchell v. Donchin*, 286 F.3d 447, 450-51 (7th Cir. 2002); *Shropshear v. Corporation Counsel*, 275 F.3d 593, 595 (7th Cir. 2001); *Athmer v. C.E.I. Equip. Co.*, 121 F.3d 294, 297 (7th Cir. 1997)—or at least the latter, for there is continuing uncertainty whether the doctrine of equitable tolling exists in Illinois, and it is that doctrine, not the federal, that applies to cases such as this in which the statute of limitations is not specified in federal law but instead is borrowed from a state's law. *Shropshear v. Corporation Counsel, supra,* 275 F.3d at 596.

What is more, the complaint states a claim under Illinois law for conversion of the prints, and the statute of limitations applicable to such a claim is five years, not two. 735 ILCS 5/13-205. The district judge expressed a disinclination to exercise his supplemental jurisdiction over any state-law claims (and thus not only conversion but also malicious prosecution) made by Bontkowski. But Bontkowski also based federal jurisdiction of those claims on diversity of citizenship, and while he failed to allege the citizenship of either himself or the defendants, it appears from the record that he is a citizen of Florida and Smith and Bront are citizens of Illinois; true, he was in jail in Illinois when he filed the suit, and that is the operative

date for determining the existence of diversity jurisdiction, but incarceration in a state does not make one a citizen of that state. A prisoner is a citizen of "the state of which he was a citizen before he was sent to prison unless he plans to live elsewhere when he gets out, in which event it should be that state." *Singletary v. Continental Illinois National Bank & Trust Co.*, 9 F.3d 1236, 1238 (7th Cir. 1993); see also *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996); *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991); *Stifel v. Hopkins*, 477 F.2d 1116, 1124 (6th Cir. 1973) (per curiam). Florida was Bontkowski's last state of citizenship before he was jailed in Illinois and there is no indication that he intends to move to Illinois (for since filing his suit he has been transferred to a prison in Florida) when he gets out of prison.

So we must reverse, but we warn Bontkowski that if he persists in this litigation and his suit turns out to be frivolous, as we believe highly likely, he is courting sanctions. *Marques v. Federal Reserve Bank*, 286 F.3d 1014, 1018 (7th Cir. 2002); *In re Mann*, 229 F.3d 657, 659 (7th Cir. 2000); *Berwick Grain Co. v. Illinois Dept. of Agriculture*, 217 F.3d 502, 504-06 (7th Cir. 2000) (per curiam).

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*