INTERNATIONAL TITANIUM CORPORATION, Plaintiff,

v.

Bryan NOEL; International Minerals Exchange; and Certified Estate Planners, Defendants.

No. CIV.1:03 CV 209.

United States District Court, W.D. North Carolina, Asheville Division.

Sept. 19, 2003.

Lee D. Andrews, Lee D. Andrews, Esquire, Greensboro, NC, Karl W. Carter, Jr., Karl W. Carter, Jr., Esquire, Edsel J. Guydon, Edsel J. Guydon, Esquire, Washington, DC, for plaintiff.

Lawrence D. Winson, Hendersonville, NC, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiff's motion for a preliminary injunction, filed August 20, 2003. The Defendants filed a response on September 3, 2003, and the matter is ready for resolution.

## I. STATEMENT OF FACTS

Plaintiff International Titanium Corporation ("ITC") is a Delaware corporation formed for the purpose of developing a mineral mining project in South America. Complaint, ¶ 3. On June 7, 2002, ITC entered into an agreement with the owner of a mineral deposit in Peru, Carlos José Paulo Casaretto Forni ("Casaretto Forni"), whereby Casaretto Forni agreed to allow ITC to mine and sell the minerals from his land. Exhibit 1A, *attached to* Defendants' Response to Plaintiff's Motion for Preliminary Injunction ["Defendants' Response"], filed September 3, 2003; Complaint, ¶ 1.

In early October 2002, ITC entered into a contract with Bryan Noel providing that Noel was to raise $1 million through debt or equity financing for ITC's mining project. Exhibit 3, *attached to* Plaintiff's Motion for Entry of Preliminary Injunction ["Plaintiff's Motion"], filed August 20, 2003. ITC also named Noel Vice President of Finance and appointed him to the ITC Board of Directors. Exhibit 15, *attached to* Plaintiff's Motion; Complaint, ¶ 10. Noel agreed to guard ITC's confidential information, not to engage in activities that conflicted with the interests of ITC, and not to profit from inside information that he acquired through his relationship with ITC. Exhibit 15, *supra.*

On December 13, 2002, Noel resigned from his positions with ITC. Exhibit 2, Affidavit of Bryan Noel, *attached to* Defendants' Response, ¶ 16. Shortly thereafter, on December 16, Casaretto Forni sent a letter to ITC terminating their agreement. Casaretto Forni accused ITC of not making the payments that it owed him even after he had renegotiated their agreement to accommodate ITC's financial difficulties. Exhibit 1C, *attached to* Defendants' Response. Finally, on January 4, 2003, Noel entered into a contract with Casaretto Forni that gave him essentially the same

mining rights that ITC had possessed under its contract. Noel Affidavit, ¶¶ 18–19; Complaint, ¶ 21. Noel also formed a new company, International Minerals Exchange ("IME"), to engage in the mining operations in Peru. Complaint, ¶ 6.

The parties agree on few other relevant facts. ITC alleges that Noel, upon learning that ITC was experiencing cash flow problems, paid Casaretto Forni $13,000 to break the contract with ITC and form the contract with Noel and IME. Complaint, ¶ 21. Noel, by contrast, claims that it was only through his efforts that Casaretto Forni agreed to the amended contract with ITC, a contract that gave ITC a more favorable payment schedule. Noel Affidavit, ¶ 11. According to Noel, it was only after ITC failed to make payments required by the amended contract that Casaretto Forni, with no encouragement from Noel, decided to terminate his relationship with ITC. Exhibit 1, Affidavit of Casaretto Forni, *attached to* Defendants' Response, ¶¶ 11, 14.

A final disputed fact involves an injunction, issued June 7, 2002, by the United States District Court for the Northern District of Illinois, prohibiting the Liberty Network, Liberty Estate Planning, The Liberty Institute, National Council of Certified Estate Planners, the Association for Certified Estate Planning Attorneys, and others from, among other things, "organizing or selling abusive tax shelters," "instructing others to promote or sell their abusive tax shelters ... by way of 'Certified Estate Planner' and 'Master Certified Estate Planner' courses," and "making false statements about the allowability of any deduction or credit ...." Exhibit 4, *attached to* Plaintiff's Motion. Although Noel did graduate from the Liberty University in 1997 with a "Master Certified Estate Planner" designation, he claims that neither he nor his company, Certified Estate Planners, was a party to the action

that brought about the injunction and that neither he nor his company are affiliated with the entities named in the injunction. Noel Affidavit, ¶ 3. ITC disputes this claim and alleges that "Defendants are subject to a federal permanent injunctive order ... prohibiting Defendants from engaging in the sale and or use of abusive tax shelters." Complaint, ¶ 1.

## II. PROCEDURAL HISTORY

On August 20, 2003, ITC filed a complaint for declaratory and injunctive relief against Noel and IME, alleging breach of fiduciary duty, tortious interference with contract, fraud in the inducement, usurpation of corporate opportunity, breach of contract, violation of the North Carolina Consumer Protection Act, conversion of corporate funds and property, and violations of the North Carolina Securities Act. On that same day, ITC also filed a motion for a preliminary injunction that would prevent the Defendants from "selling, marketing, distributing or disseminating, or otherwise sharing with third parties, the manufactured minerals/ materials" from the Peruvian mine while this litigation is pending. On September 3, 2003, the Defendants filed a response to Plaintiff's motion asking that ITC's motion be denied, that ITC be enjoined from pursuing investors for the mining project in Peru, and that ITC be enjoined from making representations that it holds any rights to that mining project.

## III. DISCUSSION

### A. Plaintiff's request for injunction

■ The first issue is whether or not the Defendants should be enjoined from continuing their activities with regard to the mining project in Peru. The Court will begin by noting that "a preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief

sought." *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir.1981). In general, a party is not entitled to a preliminary injunction unless it can show that there could be no adequate remedy at law and that, without the preliminary injunction, the party is in serious danger of suffering irreparable harm. *Pulliam v. Allen*, 466 U.S. 522, 537, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Additionally, the Fourth Circuit has instructed courts to consider the following factors: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991).

The Fourth Circuit has given courts some guidance in how to weigh each of the factors laid out in *Rum Creek*. That court has explained that " '[i]f the hardship balance tilts sharply and clearly in the plaintiff's favor, the required proof of likelihood of success is substantially reduced.' Thus, the balancing of hardships must be analyzed conceptually before and separately from the likelihood of success on the merits." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 323 (4th Cir.2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 817 (4th Cir.1991)) (internal citation omitted). The Fourth Circuit has further stated that if, after balancing the hardships, "a decided imbalance of hardship should appear in plaintiff's favor," then the court should grant the injunction so long as the " 'plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for

more deliberate investigation.' " *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 195 (4th Cir.1977) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953)).

■ With that guidance, this Court will consider whether to grant the preliminary injunction. First, the Court will consider whether ITC, if not awarded the injunction, will be subject to irreparable harm for which there could be no remedy at law. ITC's claim is based on its allegation that Bryan Noel deprived ITC of its contractual rights with Casaretto Forni. All of the pleadings thus far indicate that ITC hoped to benefit only financially from that contract. Therefore, it seems that, if ITC were to prevail on the merits of this action, the Court could fully compensate ITC by awarding it the monetary value of the contract.

Furthermore, even if ITC had suffered or were suffering irreparable harm for which there is no adequate remedy at law, the Court doubts that issuing the requested injunction would aid ITC because Casaretto Forni seems to be firm in his resolve not to conduct further business with them. In his affidavit, Forni states that he "felt like ITC was trying to trick [him] and [he] decided to cancel the contract with ITC." Casaretto Forni Affidavit, ¶ 11. He further averred that he "decided that [he] would never do business with ITC again and this was due to the dishonest methods in which they had dealt with [him]." *Id.*, at ¶ 12. Since enjoining the Defendants from exploiting Casaretto Forni's mine would probably not enable ITC to resume its contractual relationship with Casaretto Forni, the requested injunction would be of little use to ITC.[1]

1. Since few litigants request injunctive relief that would not actually assist them, there is little case law explicitly holding that a court should not issue an injunction that would be

ineffective. However, several Supreme Court decisions support the proposition that an injunction should not issue if it will serve no purpose. *Cf. e.g., United States v. W.T. Grant*

Since the Court finds that ITC has not suffered and is not suffering irreparable harm, there is no need to consider the four factors laid out in *Rum Creek*. That very case cautioned that "[t]he 'balance of hardship' test does not negate the requirement that the [movant] show some irreparable harm." *Rum Creek*, 926 F.2d at 360; *see also Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir.1994) (explaining that "courts have insisted that the harm necessary to justify issuance of a preliminary injunction be irreparable"). But even if ITC were suffering irreparable harm that an injunction could cease, the *Rum Creek* analysis would still lead the Court not to issue the injunction. The potential hardship suffered by ITC if the injunction is denied seems very slight considering that ITC seems to have little chance of reestablishing its relationship with Casaretto Forni. On the other hand, the Defendants would suffer hardship if the injunction were issued because they would be forced to delay an activity they presumably expect to be profitable. The Court finds no precedent for awarding a plaintiff a preliminary injunction when the balance of hardships favors the defendant even where the plaintiff has an impeccable case on the merits. However, even if such a precedent existed, the Court would decline to grant the injunction because, at this point, it cannot be said that either side has a decided advantage on the merits. Finally, turning to the fourth *Rum Creek* factor, if the public interest is better served by either possible resolution of this issue, it is better served by denying the injunction so that the parties who invested with Noel may be able to recoup their investment.

Therefore, since ITC is suffering no irreparable harm, since the requested injunction would be of little use to ITC, and since the *Rum Creek* factors so suggest, the Court will deny ITC's request for a preliminary injunction.

### B. Defendant's request for injunction

The final issue is whether to grant the Defendants' motion to enjoin ITC from pursuing investors for the mining project and from representing that it has rights to that project. *See* Defendants' Response, at 22. As stated above, a "preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Federal Leasing, supra*. The Defendants' response focuses entirely on why ITC's request for an injunction should be denied and advances few or no arguments that support their request for an injunction. There is simply no way for a party to establish its entitlement to such an extraordinary remedy without advancing arguments for its imposition. As such, the Defendants' request for an injunction is denied.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that the parties' respective motions for preliminary injunctions are hereby **DENIED.**

---

*Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (holding that the issue is moot and no injunction should issue when "the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated") (internal quotations and footnote omitted). Judge Posner of the Seventh Circuit also supported that proposition by refusing to enjoin the theft of property from a plaintiff when there was not "any indication that he [had] anything left worth stealing." *Bontkowski v. Smith*, 305 F.3d 757, 761 (7th Cir.2002).