In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-2507

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LARRY W. NORWOOD,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-30041–001—**Jeanne E. Scott**, *Judge*.

SUBMITTED MARCH 17, 2010—DECIDED APRIL 20, 2010

Before POSNER, MANION, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. When the defendant, Larry Norwood, was arrested on April 24, 2006, state and federal law enforcement officers took a number of items of personal property from his possession and made a list of them. The list included a Rolex watch, a bracelet, rings, and lighters. (The government does not argue that the items were related to his drug offense.) At the same time, the officers seized the truck he was driving, and the next day they delivered both the truck, and two bags

described as containing personal property of his, to a trucking company for safekeeping. But the contents of the bags were not itemized in the delivery document.

When Norwood later asked the company to return his personal property, he was met with a denial that the company had any of it. This was in the midst of the criminal proceeding against him (he had been indicted in May 2006, the month following his arrest), and he complained about his missing property to the district judge in a letter the judge received on December 14, 2006. The judge sent copies of the letter to Norwood's criminal lawyer, directing him to determine what steps should be taken to address Norwood's concerns about his property. It's unclear what if anything the lawyer did in response to this direction; he never submitted anything to the court.

On May 17, 2007, shortly after pleading guilty but before being sentenced, Norwood moved the district court to order the government to return his missing property. Rule 41(g) of the Federal Rules of Criminal Procedure authorizes the judge presiding in a criminal case to order the government to return property of the defendant that is in its possession if it has no reason to continue holding the property. (The Rule 41(g) proceeding may be maintained as an ancillary proceeding in the district court even after the criminal proceeding ends. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), and cases cited there; see also *United States v. White*, 582 F.3d 787, 806 n. 3 (7th Cir. 2009).) The government filed a written response to Norwood's motion two weeks later, stating that it had

inquired of the Drug Enforcement Administration and the Illinois State Police and neither agency had Norwood's property.

At a hearing on July 26, the judge authorized Norwood to proceed pro se for the remainder of his case (though he hadn't yet been sentenced), and discharged his lawyer. The judge also directed the government to inquire further into the whereabouts of Norwood's property. At his sentencing hearing, on August 13, the government reported that its further investigation suggested that the trucking company might have the property. The judge told Norwood she couldn't help him recover it if it was no longer in the government's possession. She suggested he sue the state police in the Illinois court of claims.

On November 21, 2008, while his appeal (later dismissed) from the criminal judgment was pending, Norwood filed a motion in the district court seeking restitution from the government of the value of the missing property, which he claimed to be $9,995. The district judge denied the motion on May 8, 2009, on the ground that Rule 41(g) does not authorize monetary relief. (That is the order from which the present appeal has been taken.) She was right about that. E.g., *Okoro v. Callaghan*, *supra*, 324 F.3d at 491; *Adeleke v. United States*, 355 F.3d 144, 151 (2d Cir. 2004); *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001). The rule doesn't mention monetary relief; and it would be odd for a court in a *criminal* proceeding to be authorized to award damages to the defendant as a remedy for an irregularity committed by law enforcement

officers—especially to award damages against the *govern-ment*, in the teeth of the long line of cases which hold that waivers of federal sovereign immunity are not to be lightly presumed, e.g., *McMahon v. United States*, 342 U.S. 25, 27 (1951), though it is unclear why this should be so; "the Supreme Court has given no rationale for the creation of [this] clear-statement rule." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3654, p. 336 (3d ed. 1998); see also *United States v. Nordic Village, Inc.*, 503 U.S. 30, 42-44 (1992) (dissenting opinion).

Norwood's motion for restitution did not mention, and in fact was unrelated to, Rule 41(g), as it sought monetary relief rather than the return, no longer possible, of his property by the government. The motion did not indicate a ground for the relief sought. The government responded on November 26, arguing that the court couldn't award damages in a criminal case and, even if it could, Norwood had no claim under the Federal Tort Claims Act. He replied on May 7, 2009, that he had a good claim under both the tort claims act and the Tucker Act. But he muddied the waters by arguing that the court's jurisdiction over his Rule 41(g) motion had not ended when the criminal proceeding had ended—which was true, but irrelevant, because he was no longer seeking the return of the property. The next day the district judge denied the motion for restitution on the ground that the court could not award damages in a criminal case. She did not mention Norwood's tort claims act or Tucker Act arguments. He renews them in this court.

The tort claims act authorizes suits against the United States for damages for "loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). There is an exception, however, for the "detention of any . . . property by any . . . law enforcement officer." 28 U.S.C. § 2680(c); see *Kosak v. United States*, 465 U.S. 848 (1984). (There are exceptions to the exception, *id.*, §§ 2680(c)(1)-(4), but they are not germane to this case.) Property seized by law enforcement officers and transferred to a third party is deemed still "detained" by the officers. *Parrott v. United States*, 536 F.3d 629, 636 (7th Cir. 2008); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002); *Schlaebitz v. U.S. Dept. of Justice*, 924 F.2d 193, 194 (11th Cir. 1991) (per curiam). So Norwood's claim under the tort claims act is barred—and for the further reason that the act requires exhaustion of administrative remedies, 28 U.S.C. § 2675(a); *Osborn v. Haley*, 549 U.S. 225, 234 (2007); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003), which, as far as we're able to determine, Norwood has not attempted.

The provision of the Tucker Act that he invokes authorizes federal district courts to entertain claims against the United States for up to $10,000 that are founded on the Constitution or a federal statute or regulation. 28 U.S.C. § 1346(a)(2). Apparently mindful of the statutory ceiling on the amount in controversy, Norwood is asking for $5 less than $10,000. If his claim exceeded $10,000, he would have to proceed in the Claims Court. 28 U.S.C. § 1491(a)(1); see, e.g., *Talley v. U.S. Dep't of Agriculture*, 595 F.3d 754, 758 (7th Cir. 2010).

Norwood claims to have been deprived of his property without due process of law. But the Supreme Court has held that the Tucker Act is not a general waiver of sovereign immunity, as it might appear to be; the plaintiff must be able to point to a constitutional, statutory, or regulatory provision that can "fairly be interpreted as mandating compensation." *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (quoting earlier cases); see also *United States v. Testan*, 424 U.S. 392, 400-01 (1976); *Willis v. United States*, 787 F.2d 1089, 1092 n. 3 (7th Cir. 1986); *Blueport Co. v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008). The standard example is the Fifth Amendment's takings clause, which in so many words requires the government to award "just compensation" when it takes private property for a public use. See, e.g., *Preseault v. ICC*, 494 U.S. 1, 11-12 (1990); *Rose Acre Farms, Inc. v. Madigan*, 956 F.2d 670, 673 (7th Cir. 1992). "By virtue of the express constitutional command for payment of just compensation, takings claims under the Fifth Amendment have become one of the classic categories of cases under the Tucker Act." Gregory C. Sisk, *Litigation With the Federal Government* § 4.09(c), p. 330 (4th ed. 2006).

Some cases hold that a Tucker Act suit can't be based on a violation of the due process clause because that clause, unlike the takings clause, doesn't say that victims of such violations must be compensated. *Martinez v. Bureau of Prisons*, 444 F.3d 620, 622-23 (D.C. Cir. 2006) (per curiam); *Rothe Development Corp. v. U.S. Dep't of Defense*, 194 F.3d 622, 626 n. 6 (5th Cir. 1999). These cases produce a curious remedial asymmetry between the two clauses. The only reason the cases give for the asymmetry—and, as

we've noted, it's a conclusion rather than a reason—is that waivers of federal sovereign immunity are interpreted narrowly. *Duarte v. United States*, 532 F.2d 850, 852 (2d Cir. 1976). But we need to explain why we called the remedial asymmetry "curious."

The takings clause allows (more precisely, does not forbid) the government to take people's property for a public use, provided that the government pays "just compensation," defined as fair market value. *United States v. Miller*, 317 U.S. 369, 373-74 (1943); *Shaikh v. City of Chicago*, 341 F.3d 627, 632 (7th Cir. 2003). So defined, just compensation is less than full compensation (what is called "common law compensation"). Full compensation will often exceed fair market value—many people would not sell their home for its fair market value, if only because of moving expenses. But while acknowledging that fair market value is not always full compensation, the Supreme Court in *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949), blunted the point by saying that the shortfall "is properly treated as part of the burden of common citizenship"—which again is a conclusion rather than a reason—but in a more practical vein remarked the difficulty of determining nonmarket values by the methods of litigation. *Id*. at 5-6.

The fact that "just compensation" tends systematically to undercompensate the owners of property taken by eminent domain underscores the fact that such a taking is not a *wrongful* act. "[T]he takings clause does not forbid takings; it requires compensation for takings." *Rose Acre Farms, Inc. v. Madigan*, *supra*, 956 F.2d at 673. (Just

as buying a toaster is not a wrongful act but failing to pay for it is.) In contrast, the due process clause absolutely forbids a deprivation of property without due process of law. Such a deprivation *is* a wrongful act. That is why it is forbidden rather than merely priced. It seems perverse that the government should be able to flout due process—depriving a person of his property with impunity (at least if the deprivation is done by law enforcement officers) and without paying *any* compensation, by hiding, selling, or destroying it—merely because the natural recourse against the government for such misconduct—a suit for restitution or for damages—is not expressly authorized in the Constitution, a statute, or a regulation. Even the takings clause does not expressly authorize a *suit* for just compensation, yet it has been held to authorize such suits nonetheless.

But some of our cases, contrary to the *Martinez* and *Rothe* cases that we cited earlier, suggest that in the case of a governmental taking that is not for a public use, the property owner may be able to obtain full common law damages—perhaps even under the takings clause, as suggested in *Lucien v. Johnson*, 61 F.3d 573, 576 (7th Cir. 1995); *Schroeder v. City of Chicago*, 927 F.2d 957, 961 (7th Cir. 1991), and *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 464-65 (7th Cir. 1988), viewed as an absolute bar to such a taking. And neither the Federal Tort Claims Act nor the Tucker Act exhausts Norwood's potential (but we stress "potential") remedies. One possibility might be a claim against the federal officers who seized his property, rather than against the government itself—*Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971), allowed such a suit as a remedy for an unconstitutional search—and against the state officers under 42 U.S.C. § 1983. But *Washington v. Davis*, 426 U.S. 229, 239-41 (1976), holds that only intentional conduct violates the Constitution, see also *Daniels v. Williams*, 474 U.S. 327 (1986); *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 274 (1979), and if that limitation is applicable here—that is, if the officers accidentally (even if negligently) lost, rather than stole or wantonly destroyed, Norwood's property—it bars a *Bivens* claim, see *Polanco v. DEA*, 158 F.3d 647, 650 (2d Cir. 1998); see also *Denson v. United States*, 574 F.3d 1318, 1336 (11th Cir. 2009), as well as a claim against the state officers under 42 U.S.C. § 1983. And a takings claim as well, since "accidental injuries are not takings." *Lucien v. Johnson*, *supra*, 61 F.3d at 576.

How a *Bivens* claim would fare in this case cannot yet be determined; the record does not reveal what role the arresting officers (or other officers who may have been involved) played in the loss of Norwood's property. It is unclear whether they stole it, or lost it, or indeed just deposited it with the trucking company for safekeeping. If they lost it accidentally, or deposited it with the trucking company, there would be no denial of due process. But while Norwood's opening brief states that "the government has lost his personal property"—which might seem to scotch any claim of deliberate wrong-doing—actually the statement is ambiguous. It could just mean that the government lost Norwood's property because its agents had stolen it; one of his filings in the district court states that the property was "lost *or stolen*

by governmental officials" (emphasis added). We do not yet know which.

A *Bivens* suit may fail, regardless of the nature of the wrongdoing, because of the exclusion (with irrelevant exceptions) from the Federal Tort Claims Act of government liability for a property loss caused by law enforcement officers. The Supreme Court has become extremely chary of recognizing a *Bivens* claim where either there is an adequate alternative remedy, or, though there is not (and there is not under the Federal Tort Claims Act, as we have seen), recognition of such a right of action would disrupt a federal program or have other untoward consequence. See, e.g., *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001); *Schweiker v. Chilicky*, 487 U.S. 412 (1988), and other cases cited in *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009) (en banc). In fact the Court has not recognized such a right in a new class of cases since *Carlson v. Green*, 446 U.S. 14 (1980), thirty years ago.

The Supreme Court's reluctance to recognize new *Bivens* claims is related to its general retreat (which began in *Cort v. Ash*, 422 U.S. 66 (1975), just a few years after *Bivens*) from recognizing implied rights of action. (*Bivens* had implied a right to sue for damages under the Fourth Amendment, which doesn't mention any such right.) Allowing damages suits to be brought against federal law enforcement officers accused of having improperly disposed of a criminal suspect's property might be thought an end run around the statutory exclusion of such claims when filed against the government itself.

And we'll see that there may be alternative remedies to a *Bivens* claim in a case such as this.

The Supreme Court in the *Malesko* case did suggest that the recognition of a right to sue under *Bivens* might be appropriate "to provide an otherwise nonexistent cause of action against *individual* officers alleged to have acted unconstitutionally." *Correctional Services Corp. v. Malesko*, *supra*, 534 U.S. at 70 (emphasis in original). So maybe there is a ray of hope for Norwood to succeed on a *Bivens* claim. But the ray dims when we note that 31 U.S.C. § 3724(a) authorizes the Attorney General of the United States to "settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer . . . employed by the Department of Justice acting within the scope of employment. . . ." This fits Norwood's case to a T. But unfortunately for him "a claim may be allowed only if it is presented to the Attorney General within one year after it accrues," *id.*, and the time is now up; for his claim would have accrued no later than August 13, 2007, when, at his sentencing hearing, the government informed the court (and him) that it didn't have his property. His claim may have accrued even earlier, on May 17, 2007, when he first moved for the return of his property; for the basis of the motion presumably was a belief that the property was being wrongfully withheld from him.

We note the absence of judicial review of the Attorney General's decson on whether or on what terms to

settle a claim: section 3724(b) provides that "a claim may be paid under this section only if the claimant accepts the amount of the settlement in complete satisfaction of the claim against the Government." In other words, victims of torts by federal law enforcement agents are remitted to an administrative remedy that is final. Cf. 31 U.S.C. § 3721(k); *Oriakhi v. United States*, 2009 WL 1066109, at *1 (D.N.J. Apr. 20, 2009). If that remedy is adequate despite the absence of judicial review, this would probably scotch any *Bivens* remedy.

A final obstacle to all of Norwood's potential remedies, but not necessarily an insuperable one under the peculiar circumstances of this case, is that a motion in a criminal case is not a proper method of commencing a civil suit. He was proceeding pro se, and "when a district court conducting a Rule 41(e) [now 41(g)] proceeding learns that the government no longer possesses property that is the subject of the motion to return, the court should grant the movant (particularly a movant proceeding *pro se* . . .) an opportunity to assert an alternative claim for money damages." *United States v. Hall*, *supra*, 269 F.3d at 943. "[A] pro se Rule 41(g) motion should be liberally construed to allow the assertion of alternative claims." *United States v. Albinson*, 356 F.3d 278, 284 n. 9 (3d Cir. 2004); see also *Peña v. United States*, 157 F.3d 984, 987 (5th Cir. 1998); cf. *Jackson v. United States*, 526 F.3d 394, 398 (8th Cir. 2008).

Norwood asked for monetary relief in a separate motion after his Rule 41(g) motion was denied. He would have to pay a filing fee in order to convert the motion

into a proper civil suit, *United States v. Howell*, 354 F.3d 693, 695 (7th Cir. 2004) and if he wanted to make a *Bivens* claim he would have to join the officers in their individual capacities as defendants and serve them. But the *Hall*, *Albinson*, and *Peña* decisions that we've cited would (and *Jackson* might) permit such a conversion when the movant was pro se; and we are not aware of any contrary authority.

This is not to say, and these decisions do not say, that a district judge must always, or indeed usually, convert a motion for civil relief in a criminal case into a civil complaint. The denial of relief under Rule 41(g) is not with prejudice against the movant's filing a civil suit for the value of property taken from him and then lost. Indeed the denial clears the deck for his filing a civil suit and is normally preferable to contorting a motion filed under the criminal rules into a civil pleading. The wrinkle here is the statute of limitations. Not the statute of limitations for filing a claim with the Attorney General under 31 U.S.C. § 3724. That statute has expired for good, for Norwood never filed anything with the Attorney General.

But whether the two-year statute of limitations for filing *Bivens* and section 1983 claims, *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996), has expired depends on whether the motion for restitution can be deemed the commencement of a civil suit. For if so, a *Bivens* and a section 1983 claim might relate back to the date on which the motion was filed, which although more than two years after the seizure of his property was less than

two years after his claim accrued under the discovery rule that governs the accrual of claims in federal suits. The discovery rule starts the statute of limitations running only when the plaintiff learns that he's been injured, and by whom. *United States v. Kubrick*, 444 U.S. 111 (1979); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). That was August 13, 2007, at the latest, as we said, and Norwood filed his motion for restitution in November of the following year. But it is now much too late for him to file a *Bivens* or section 1983 suit that would not be barred by the two-year statute of limitations, and so if the denial of his motion for restitution is affirmed such claims are barred. This is a harsh consequence for a pro se, and would be contrary to the *Hall*, *Jackson*, *Albinson*, and *Peña* decisions.

If the motion for restitution is treated as a civil complaint, it would have to be amended in order to state claims under *Bivens* or section 1983. An amendment to a complaint relates back to the date of the filing of the original complaint if (so far as bears on this case), though the amendment adds or changes a party, the new party should have known that had it not been for a mistake, he would have been named in the original complaint. Fed. R. Civ. P. 15(c)(1)(C)(ii). This is to be distinguished from a case in which rather than naming the wrong party, the plaintiff names a fictitious party, or no party, as defendant. *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000). One can't file a suit against a nonexistent party, although one may be able to invoke a tolling rule to delay suing if it is not possible even with the exercise of due diligence to identify the injurer.

The condition in Rule 15(c)(1)(C)(ii) for relation back appears to be satisfied. In its May 31, 2007, response to Norwood's original motion, the government indicated that it had inquired of both the federal and state officers involved in the arrest of Norwood and the seizure of his property about its whereabouts. That was notice to them of his claim and if any of these agents had stolen his property, they knew that Norwood had made an excusable mistake in seeking to hold the government responsible for the loss because he didn't realize that the property was no longer in the government's possession.

In *Peña*—in this respect strikingly like the present case—the Fifth Circuit held that although the district court had properly denied the plaintiff's Rule 41(e) [now 41(g)] motion because his property had been destroyed, he should have been given the opportunity to amend his pleadings to add a *Bivens* claim. The court said that although the statute of limitations for bringing a *Bivens* suit had expired, an amended pleading would relate back to his original pleading, that is, to his Rule 41(e) motion. *Hall* and *Albinson* are similar. The same result should obtain in this case. The case must therefore be remanded to enable Norwood to amend his complaint.

If he decides to do that, he may wish to add a state-law claim against the trucking company for conversion as a supplemental claim in his federal suit. *Ruiz v. Wolf*, 621 N.E.2d 67, 69 (Ill. App. 1993); see 28 U.S.C. § 1367. There would be no need for relation back because the statute of limitations under Illinois law for a suit for conversion

is five years. 735 ILCS 5/13-205; *Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002). (He could instead file such a suit in an Illinois state court.)

He might also add a claim against the *federal* officers for conversion under Illinois state law, if he can prove that they stole his property. It is true that the Westfall Act (Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679) provides for the substitution of the United States as a defendant in any suit against a federal employee which charges a common law tort committed within the scope of his employment. 29 U.S.C. § 2679(d)(1). Were Norwood to charge that, it would convert his suit against the officers to one against the United States under the Federal Tort Claims Act. That would thwart his suit if the officers were acting within the scope of their federal employment—but they were not if they actually stole his property. The Westfall Act would therefore not apply, and they would be liable for conversion under state law.

Whether Norwood can prevail on any legal theory is uncertain, especially with his most straightforward remedy—the filing of a claim with the Attorney General under 31 U.S.C. § 3724—shut off. But he is entitled to an opportunity to develop the facts more fully—to try to discover who actually was responsible for the loss of his property, and how it was lost—without encountering the bar of the statute of limitations. Depending on what such further inquiry reveals, he may have a remedy against that person or persons, and he preserved the right to seek such a (civil) remedy, without encountering

the bar of the statute of limitations (except with respect to filing a claim with the Attorney General), by the filing of his motion for restitution in his criminal proceeding.

Unlike many of the plaintiffs in prisoner civil rights suits, Norwood may well have suffered a harm for which the law should provide a remedy. A report by the state police lists the personal property that was taken from Norwood's possession when he was arrested, and so there is little doubt that it was indeed in his possession then; and while a number of months after his arrest he wrote the trucking company asking it to turn over his property to a friend of his named Sparks, he contends, as yet without contradiction, that the company did not do so. The merits of his claim that his property has been lost or stolen cannot be determined without further proceedings. His pro se status has put him at a serious disadvantage in dealing with a complex body of law (as indicated by the length of this opinion); yet given the modest size of his claim, it is hardly likely that he could have found a lawyer to represent him.

We vacate the decision of the district court and return the case to that court for further proceedings consistent with this opinion. The district judge may want to consider whether to request a member of the bar to represent Norwood in the further proceedings.

VACATED AND REMANDED.