**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

ANH NGOC DANG,

       Defendant - Appellant.

No. 13-3109
(D.C. No. 2:98-CR-20029-KHV-DJW-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **HOLMES**, Circuit Judges.

At his sentencing hearing, as he was being taken into custody, deputy marshals seized a large sum of cash from Anh Ngoc Dang. Upon motion by the government, the district court authorized the Marshal's Office to turn over the money to the clerk of court to be applied toward Mr. Dang's restitution obligation in a prior case.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this appeal, Mr. Dang argues that the marshals seized his money in violation of the Fourth Amendment and that the money should therefore be returned to him. Because he has failed to show his entitlement to return of the money on that basis, we affirm.

## BACKGROUND

In 2000, Mr. Dang pled guilty to one count of wire fraud. He was ordered to pay $78,517.59 in restitution to the victim, AT&T. Most of the restitution remained unpaid when, in July 2012, Mr. Dang was sentenced to incarceration for a new offense: illegally producing identification documents. *See United States v. Dang*, 512 F. App'x 837 (10th Cir. 2013) (affirming, on direct appeal, Dang's sentence for the identification-document offense).

At the close of his July 2012 sentencing hearing, the district court directed two deputy United States Marshals present in the courtroom to take Mr. Dang into custody for transportation to the Bureau of Prisons. Consistent with their usual practice, the deputy marshals directed Mr. Dang to remove his belt and personal belongings to give them to his wife or counsel. During this process, Mr. Dang placed $1,472 in cash on the counsel table.

Mr. Dang's counsel picked up the money to hand it to Mr. Dang's wife, but one of the deputy marshals directed him not to touch it. The deputy marshal then took possession of the cash and asked the government's counsel what to do with it. In turn, counsel asked the sentencing judge what to do with the money. The judge

- 2 -

directed that the money remain with the United States Marshal pending a decision concerning its disposition.

The government subsequently filed, in Mr. Dang's 1998 criminal case, its "Motion for Order Authorizing Turnover of Monies Held by the United States Marshal's Office to the United States District Court for Partial Payment of Restitution." The government argued that the money seized at the 2012 sentencing should be applied to Mr. Dang's outstanding restitution obligation in the 1998 case. Mr. Dang opposed the motion, arguing that the deputy marshals had no authority to seize the money, and that its seizure and disposition violated his due process rights. He requested that the money either be returned to his wife or placed in his prison account.

The district court granted the government's motion. It reasoned that under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A-3664, the government had a lien on all of Mr. Dang's property and was entitled to collect the restitution he owed using practices and procedures for enforcement of a civil judgment provided for under state or federal law. The district court noted that when the deputy marshals took Mr. Dang into custody, he had an ownership interest in the money, and it was not exempt from execution. Alternatively, the court relied on a provision of the MVRA that authorizes the government to enforce a restitution order "by all other available and reasonable means," *id.* § 3664(m)(1)(A)(ii), including writs authorized by the All Writs Act, 28 U.S.C. § 1651. Mr. Dang appealed.

## ANALYSIS

Mr. Dang presents a narrow appellate argument. Citing *United States v. Creighton*, 639 F.3d 1281, 1283-84 (10th Cir. 2011), he contends that the marshals' seizure of his cash was analogous to an unauthorized post-arrest inventory search. He argues that the Marshal's service lacks a policy for such seizures of the kind "sufficiently regulated to satisfy the Fourth Amendment." *Id.* at 1284. He also argues that the marshals did not have probable cause to seize the money. Aplt. Opening Br. at 5. In essence, Mr. Dang asserts that his money should be returned to him, not because it could not be applied to his restitution obligation, but because the deputy marshals violated the Fourth Amendment when they seized it.

This argument, however, is misplaced. This appeal arises from an order in Mr. Dang's 1998 criminal case granting the government's motion to enforce his restitution obligation by applying cash in its possession. Mr. Dang cites no authority from which we could conclude that the prior alleged Fourth Amendment violation prohibited the district court from entering such an order, or was even a relevant issue in these proceedings. In fact, there is persuasive authority to the contrary.

Persons aggrieved by the wrongful seizure of their property, including cash, by law enforcement authorities may file a motion for return of property under Fed. R. Crim. P. 41(g) (formerly 41(e)). *See id.* (permitting a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return."). Even when a defendant under an order of

restitution has asserted a claim under Rule 41(g) and has established ownership of the property, however, funds in the government's hands may be applied instead to his restitution obligation, because an order of restitution creates a lien against the defendant's property that can be enforced against the property in the government's possession. *United States v. Mills*, 991 F.2d 609, 612-13 (9th Cir. 1993); *cf. United States v. Duncan*, 918 F.2d 647, 653-54 (6th Cir. 1990) (approving denial of 41(e) motion and use of funds instead to pay monetary penalties). *But see United States v. Kaczynski*, 416 F.3d 971, 974 n.5 (9th Cir. 2005) (noting use of restitution lien "to defeat a defendant's claim of ownership," was appropriate in case where "the government has already *lawfully* seized the property" (emphasis added)). A similar restitution lien existed "on all property and rights to property" owned by Mr. Dang. 18 U.S.C. § 3613(c).

The issue of whether the deputy marshals violated the Fourth Amendment is distinct from the appropriate disposition of the cash seized. The manner in which the government came into possession of the cash does not govern whether the cash could be applied to Mr. Dang's restitution obligation.

This is not to say that Mr. Dang lacked any other remedy for the alleged Fourth Amendment violation, such as a *Bivens* action seeking relief against the marshals. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,

403 U.S. 388, 389 (1971) (recognizing damage remedy for wrongful search and

seizure). But there is no indication he pursued any such other remedy.[1]

Mr. Dang was also free in this proceeding to raise substantive and procedural

objections to the application of the funds to his restitution obligation. In fact, in the

district court, he made several due process-based arguments. On appeal, however, he

has failed to renew any of these arguments. Mr. Dang does not challenge the district

court's conclusions that he owed the restitution and that the funds were properly

applied to his restitution obligation under the MVRA. Nor does he challenge the

district court's rejection of the arguments he claimed he could have made in

opposition to disposition of the funds had proper collection procedures been

followed.[2] He has waived any such arguments for purposes of appeal. *See Bronson*

---

[1]     To be sure, Mr. Dang did title some of his pleadings as though they requested affirmative relief. *See* "Opposition to Government's Motion to Turn Over Money, *Defendant's Motion to Return the Money to his Wife and Motion to Suppress Seizure by the United States Marshal*," R., Vol. I at 25 (emphasis added); "Supplement to Opposition to Government's Motion to Turn Over Money, *Defendant's Motion to Return the Money to his Wife and Motion to Suppress Seizure by the United States Marshal*," *id.* at 49 (emphasis added). But he filed no separate motion for this purpose. Nor would this have been a proper method of bringing a *Bivens* suit. *See United States v. Norwood*, 602 F.3d 830, 836 (7th Cir. 2010) ("[A] motion in a criminal case is not a proper method of commencing a civil [*Bivens*] suit."). The district court treated the pleadings as objections only, and made no ruling on them as separate motions for affirmative relief—a disposition Mr. Dang does not challenge. *See* R., Vol. I at 62 (granting government's motion).

[2]     In his response to the government's motion, Mr. Dang argued that his wife had given him the money to place in his prison account, where it "would likely receive different treatment as to the percentage and frequency of forfeiture than would money sitting in a bank account." R., Vol. I at 27. In a supplemental response,

(continued)

- 6 -

*v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (arguments not raised and developed in opening brief are waived for purposes of appeal).

In sum, Mr. Dang has failed to demonstrate that the district court committed reversible error in ordering that $1,472 in the custody of the United States Marshal be deposited with the clerk of court to be applied to his restitution obligation. The judgment of the district court is therefore AFFIRMED.

Entered for the Court

Jerome A. Holmes
Circuit Judge

---

Mr. Dang raised a second potential defense: that a portion of the cash seized was exempt under statutes that "provide for a limit to the amount of money the government may take." *Id.* at 53.

In its order authorizing turnover of the money in partial satisfaction of Mr. Dang's restitution obligation, the district court discussed and rejected each of these defenses. It reasoned that: (1) Mr. Dang had failed to show that any of the cash was exempt property under 18 U.S.C. § 3613; and (2) he had failed to "cite any rule or regulation which prohibits or limits the use of funds deposited in a prison account" for restitution purposes. *Id.* at 61. Mr. Dang does not challenge this reasoning on appeal.